IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Clorox Spain S.L.,<br><br>    Ayala 66, 1º Izquierda<br>    Madrid 28001<br>    Spain<br><br>    *Petitioner*,<br><br>v.<br><br>The Bolivarian Republic of Venezuela,<br><br>    Procuraduría General de la República<br>    Bolivariana de Venezuela<br>    Av. Los Ilustres, Cruce con Calle<br>    Francisco Lazo Martí, Edificio Sede<br>    Procuraduría General de la República,<br>    Urb. Santa Mónica<br>    Caracas, 1040<br>    Venezuela<br><br>    *Respondent*. | **Civil Action No.** _____ |

**Petition to Enforce Arbitral Award**

Petitioner Clorox Spain S.L. ("Clorox Spain") brings this action to enforce an arbitral award (the "Award") issued on August 9, 2023 in Permanent Court of Arbitration ("PCA") Case No. 2015-30 against Respondent, the Bolivarian Republic of Venezuela ("Venezuela"), following arbitration proceedings seated in Geneva, Switzerland and conducted pursuant to the Agreement Between the Kingdom of Spain and the Bolivarian Republic of Venezuela on the Reciprocal Promotion and Protection of Investments, dated November 2, 1995 (the "Spain-Venezuela Treaty" or the "Spain-Venezuela BIT").

A certified copy of the Award in the original Spanish is attached as Exhibit A to the Declaration of Jason W. Myatt ("Myatt Declaration"), Exhibit 1 hereto. A certified English translation of the Award is attached as Exhibit B to the Myatt Declaration.

Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention") (Exhibit 2 hereto) and its implementing legislation, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–08, Clorox Spain requests that this Court enforce the Award and enter judgment in Clorox Spain's favor in the amount of the Award, including pre- and post-award interest until full payment of the award, plus legal costs and expenses incurred in securing the Award.

## Parties

1. Petitioner Clorox Spain is a company constituted and registered under the laws of the Kingdom of Spain ("Spain").

2. Respondent Venezuela is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1602–1611.

## Jurisdiction and Venue

3. This Court has subject-matter jurisdiction over this action pursuant to the FSIA, 28 U.S.C. § 1330(a), because this is a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity from jurisdiction" under the FSIA, 28 U.S.C. § 1605(a)(1), (6).

4. Pursuant to Section 1605(a)(1) of the FSIA, Venezuela is not entitled to immunity from jurisdiction because this is a proceeding to confirm an arbitral award pursuant to the New York Convention, and Venezuela implicitly waived its immunity from jurisdiction over such proceedings by agreeing to that Convention. *See Tatneft v. Ukraine*, 771 F. App'x 9, 9–10 (D.C.

2

Cir. 2019) (per curiam); *Creighton Ltd. v. Gov. of the State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999).

5. In addition, pursuant to Section 1605(a)(6) of the FSIA, Venezuela is not entitled to immunity from jurisdiction over this action because this is an action to confirm an arbitral award that is governed by the New York Convention, which is a treaty in force in the United States for the recognition and enforcement of arbitral awards. *See Blue Ridge Investments, L.L.C. v. Republic of Argentina*, 735 F.3d 72, 85 (2d Cir. 2013).

6. This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a "proceeding falling under the [New York] Convention," and is therefore "deemed" by the FAA "to arise under the laws and treaties of the United States," 9 U.S.C. § 203.

7. This Court has personal jurisdiction over Venezuela pursuant to the FSIA. 28 U.S.C. § 1330(b).

8. Venue is proper in this Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4).

## The Underlying Dispute

9. Corporación de Clorox Venezuela S.A. ("Clorox Venezuela") has operated in Venezuela since 1990. In 2011, Clorox Spain was formed and, in April 2011, it became the sole owner of Clorox Venezuela. At the time of Clorox Spain's acquisition, Clorox Venezuela was a profitable enterprise, with an average gross margin of 40% and an average operating margin of 20%. Award ¶ 265. That all changed in November 2011, when Venezuela began to destroy, slowly but inexorably, Clorox Venezuela's operations.

10. First, Venezuela froze the prices of products representing 73% of Clorox Venezuela's sales by volume. Award ¶ 461. Then, effective April 1, 2012, Venezuela set maximum prices for those same products, thereby "depriving Clorox Venezuela of the ability to set its own product prices to reflect market conditions, its cost structure and the rampant inflation Venezuela was experiencing at the time." Award ¶ 265. Before these freezes, just 0.4% of Clorox Venezuela's sales volume by total units sold was subject to price regulations. *Id*. Once the new maximum prices were put in place that amount increased to 73% of sales volume by total units sold. *Id*. These changes also removed a fundamental protection for producers such as Clorox Venezuela by lifting the requirement that regulated prices "could not be lower than total production costs." *Id*.

11. Second, Venezuela improperly restricted Clorox Venezuela's access to foreign currency necessary to import raw materials and other inputs for the production process. Award ¶ 431. Under then-applicable Venezuelan law, all foreign currency purchase requests were to be filed with Venezuela's Foreign Exchange Administration Commission, known as "CADIVI." In practice, the approval and payment processes were exceedingly cumbersome. For example, by March 2014, Venezuela was "288 days behind in approving the payment of foreign currencies (which had been previously authorized in 2013)." *Id*. These delays, combined with other actions by Venezuela, resulted in an "exchange rate regime [that] imposed an arbitrary and undue burden" on Clorox Spain by "prevent[ing] Clorox Venezuela from operating as a functional, commercial company that purchased and imported materials, paid royalties and technical assistance fees, and repatriated the proceeds of its investment freely." Award ¶ 434.

12. Third, while Clorox Venezuela was effectively forced to "to act as tax collectors for the [Venezuelan] government," Award ¶ 426, because, as a designated "special taxpayer" or

4

Valued Added Tax withholding agent under Venezuela law, it was required to collect Value Added Taxes on the price of goods and services it sold while also paying Value Added Taxes on the cost of its production inputs, Award ¶ 424.  Under the law at the time, this arrangement entitled Clorox Venezuela to certain tax offsets.  Award ¶ 425.  And when such offsets were insufficient to fully reimburse Clorox Venezuela for the taxes it paid on behalf of others, the company was entitled to recover the excess payments from Venezuela.  Award ¶ 426.  In practice, however, Venezuela repeatedly ignored petitions by Clorox Venezuela to recover excess tax payments, even though compensatory tax credits should have been paid within 30 days.  Award ¶ 427.

13.     Collectively, Venezuela's "self-proclaimed authority to determine the costs and prices of Clorox Venezuela's products, . . . the decision to deny Clorox Venezuela's rightful claim to the recovery of VAT credits, and the restrictive foreign exchange regulations, [caused] Clorox Venezuela [to become] an unsustainable operation," thus destroying the value of Clorox Spain's investment.  Award ¶ 435.

## The Agreement to Arbitrate

14.     Because Clorox Spain is a Spanish company, its investments in Venezuela are protected by the bilateral investment treaty between Spain and Venezuela—the Agreement Between the Kingdom of Spain and the Bolivarian Republic of Venezuela on the Reciprocal Promotion and Protection of Investments, dated November 2, 1995, Exhibit 3 (Spanish) and Exhibit 4 (English) hereto.  The Spain-Venezuela Treaty is intended to "promot[e] and protect[]" "investments" and "intensify" "economic co-operation" between Spain and Venezuela.  Spain-Venezuela Treaty, pmbl.

15. To further economic cooperation, Spain and Venezuela each pledged, among other things, to "provide full protection and security in accordance with international law to investments made in its territory by investors of the other [country]," and not to "obstruct by arbitrary or discriminatory means the management, maintenance, development, use, enjoyment, extension, sale or, where appropriate, liquidation of such investments." Spain-Venezuela Treaty, Art. III, ¶ 1.

16. Article XI of the Spain-Venezuela Treaty provides that if a dispute between an investor of one contracting state and the other contracting state "cannot be resolved" "by amicable agreement" the dispute may be submitted, at the investor's choice, "[t]o the International Centre for Settlement of Investment Disputes (ICSID)" provided that both Spain and Venezuela are parties to the ICSID Convention.

17. As Venezuela had withdrawn from the ICSID Convention by the time the dispute arose, the instant dispute was to be presented to ICSID's "Additional Facility for the administration of conciliation, arbitration and factfinding procedures" or such other "ad hoc court of arbitration established in accordance with the arbitration rules of the United Nations Commission on International Trade Law" to which the parties may agree. Spain-Venezuela Treaty, Art. XI, ¶¶ 2(b), 3.

18. Here, Clorox Spain and Venezuela ultimately agreed to the application of the 2010 Arbitration Rules of the United Nations Commission on International Trade Law (the "UNCITRAL Rules"). Award ¶ 5. The Permanent Court of Arbitration was designated as the administrating entity of the arbitration on December 4, 2014. Award ¶ 21.

19. The Spain-Venezuela Treaty remains in full force and effect and serves as a standing offer by Venezuela to arbitrate disputes arising from investments in Venezuela. Clorox Spain accepted that offer in serving its Notice of Arbitration.

## The Arbitration and the Award

20. On May 18, 2015, Clorox Spain commenced arbitral proceedings against Venezuela pursuant to Article XI of the Treaty and the UNCITRAL Rules. Award ¶ 4. Under the UNCITRAL Rules, the arbitration was deemed to have commenced on May 18, 2015, the day Venezuela received the Notice of Arbitration. Award ¶ 6.

21. An ad hoc arbitral tribunal administered by the Permanent Court of Arbitration (the "Tribunal") was fully constituted on September 22, 2015, the date on which the Secretary-General of the Permanent Court of Arbitration appointed a presiding arbitrator. Award ¶ 10. The parties agreed that the legal place of arbitration would be Geneva, Switzerland. Award ¶ 23.

22. The Tribunal conducted a hearing at the ICC Hearing Centre in Paris, from May 22 through May 26, 2017. Award ¶ 115. Substantial written submissions followed. On May 20, 2019, the Tribunal issued an award finding that it lacked jurisdiction to decide Clorox Spain's claim because Clorox Spain did not hold a protectible investment under the Spain-Venezuela BIT. Award ¶ 204.

23. Clorox Spain sought annulment of that decision from the Swiss Federal Court on June 18, 2019. Award ¶ 206. The Swiss Federal Court found that the Tribunal had applied an unduly narrow definition of "investment" and, on March 24, 2020, remanded the case back to the Tribunal. Award ¶ 207.

24. As explained by the Tribunal:

> [T]he Swiss Court stressed that the BIT does not contain requirements beyond the holding by an investor of a contracting party of assets in the

7

>territory of the other contracting party and that, by requiring additional conditions for declaring itself lacking jurisdiction, the Arbitral Tribunal had not validly justified its decision. The Swiss Federal Court, however, indicated that the case should be remanded back to the Arbitral Tribunal for a decision on the issue of "abuse of process" and other possible objections to its jurisdiction.

Award ¶ 208.

25. On remand, the Tribunal directed the parties to prepare further submissions on jurisdiction, and then closed jurisdiction proceedings on June 2, 2021. Award ¶ 233.

26. On June 17, 2021, the Tribunal issued an award dismissing Venezuela's abuse of process objections (the "Second Award"), thereby confirming the Tribunal's jurisdiction and the admissibility of Clorox Spain's claims. Award ¶ 234. Venezuela sought the annulment of the Second Award before the Swiss Federal Court and on May 20, 2022, the court upheld the Second Award's jurisdictional findings. Award ¶ 259.

27. Following the issuance of the Second Award, the parties submitted memorials on the merits, damages, and costs. On August 9, 2023, the Tribunal issued its 200-page final Award.

28. In the Award, the Tribunal found that Venezuela breached Article V(1) of the Spain-Venezuela BIT. More specifically, the Tribunal found that the Venezuela took a series of measures between November 22, 2011 and September 4, 2014 that served to "progressively expropriate[]" Clorox Spain's investment in the country. Award ¶ 699.

29. These measures included (1) caps on the prices at which Clorox Venezuela could sell its products, (2) exchange control regulations, and (3) the improper denial of VAT credits. Collectively, these measures made it impossible for Clorox Venezuela, and thereby Clorox Spain, to operate its business at a profit. *Id*.

30. As to the first measure, the Tribunal concluded that "as a result of its implementation of the price regulations, [Venezuela] consciously and rigorously forced Clorox Venezuela to sell at least 70% of its products at prices below its production costs, as of April 1, 2012, which generated losses that progressively rendered Clorox Venezuela's business unviable." Award ¶ 644; *see also* Award ¶ 687 (explaining that Venezuela set "maximum prices . . . for at least 70% of Clorox Venezuela's products without concern for Clorox Venezuela's production costs, [which] inevitably led over time to the expropriation of Clorox Venezuela").

31. As to the second measure, the Tribunal concluded "that the devaluation of the Bolivar in February 2013, the shortage of foreign currencies, and the implementation of foreign exchange regulations limited Clorox Venezuela's ability to import the necessary inputs for the production of its products." Award ¶ 655.

32. As to the third measure, the Tribunal concluded that by "not allowing Clorox Venezuela to recover VAT credits that were indisputably due" Venezuela "aggravat[ed] Clorox Venezuela's precarious economic situation," thereby "affecting the viability of its business." Award ¶ 661.

33. In addition, the Tribunal concluded that "in having occupied and reactivated Clorox Venezuela's production units, [Venezuela] was exercising full control over [Clorox Spain's] investment in Venezuela, and doing so independently of the potential legality of this takeover under Venezuelan or international law." Award ¶ 665.

34. The Tribunal's Award ordered Venezuela to pay Clorox Spain $104,102,806 in compensation, together with pre-award interest from September 3, 2014, until August 9, 2023, at a rate corresponding to the interest yield rate on ten-year U.S. bonds compounded annually. Award ¶ 836.

35. In addition, the Award requires Venezuela to reimburse Clorox Spain $4,959,729.77 in legal fees and costs. Award ¶ 839.

36. The Award further requires Venezuela to pay post-award interest at a rate corresponding to the interest yield rate on ten-year U.S. bonds compounded annually from the date of the award (August 9, 2023) until the date of full payment. Award ¶¶ 836, 839.

37. On September 14, 2023, Venezuela filed an appeal in the Swiss Federal Court seeking to annul the final Award as against public policy. The Swiss court rejected that appeal on April 26, 2024.

## Legal Basis for Relief

38. The New York Convention is a multilateral international treaty among 172 nations governing "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, art. I(1). The Convention provides that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." *Id.*, art. III.

39. The United States is a contracting party to the New York Convention and has agreed to apply the Convention to disputes arising out of a "commercial" relationship. New York Convention, 21 U.S.T. at 2560. Congress codified the New York Convention in the FAA, 9 U.S.C. §§ 201–08.

40. In the United States, an award issued pursuant to arbitration conducted in the territory of a party to the Convention falls under the Convention, as implemented in the FAA, if the award "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial." 9 U.S.C. § 202. Thus, the FAA applies when "'(1) there is a written agreement;

(2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope.'" *Africard Co. Ltd. v. Republic of Niger*, 210 F. Supp. 3d 119, 123 (D.D.C. 2016).

41. Enforcement of an arbitral award that is subject to the New York Convention is governed by Section 207 of the FAA, which entitles "any party to the arbitration" to apply "for an order confirming the award as against any other party to the arbitration" within three years after the arbitral award has been issued. 9 U.S.C. § 207. The party seeking to confirm an award must submit the "duly authenticated original award or a duly certified copy thereof" and the "original agreement [to arbitrate] . . . or a duly certified copy thereof." New York Convention, art. IV(1).

42. Upon submission of an application for confirmation, the court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. "Federal courts in the United States have minimal discretion to refuse to confirm an arbitration award under the FAA." *Tatneft v. Ukraine*, 301 F. Supp. 3d 175, 184 (D.D.C. 2018) (citing 9 U.S.C. § 207). "Confirmation proceedings are generally summary in nature" because the New York Convention "provides only several narrow circumstances where a court may deny confirmation of an arbitral award." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011). "[T]he showing required to avoid summary confirmation . . . is high." *Id*.

## Cause of Action and Request for Relief

43. Petitioner repeats and re-alleges the allegations in paragraphs 1 through 42 as if set forth fully herein.

44. The Award falls under the New York Convention because it is based on the multi-million dollar investments of Clorox Spain, a Spanish company, in business operations and activities in Venezuela—namely, its ownership of the operations of Clorox Venezuela, which were commercial in nature, were international and not domestic in scope, and are entitled to protection under the Spain-Venezuela BIT, which provides for arbitration of disputes arising thereunder. *See, e.g.*, Award ¶ 234 ("On June 17, 2021, the Tribunal rendered a second award dismissing Respondent's abuse of process objection, thus confirming the Tribunal's jurisdiction and that the claim submitted to it by Claimant under the auspices of the Spain-Venezuela BIT is admissible.").

45. The Award is the result of an arbitration seated in Switzerland—a party to the New York Convention—between Venezuela and Clorox Spain. The parties' agreement to arbitrate is found in Article XI of the BIT and in Petitioner's submission of its claim to arbitration by accepting the standing offer to arbitrate investors' claims found in the BIT. The Award was made within the past three years, on August 9, 2023.

46. Pursuant to Article IV of the New York Convention, a party applying for recognition and enforcement of an award "shall, at the time of the application, supply: (a) [t]he duly authenticated original award or a duly certified copy thereof; [and] (b) [t]he original agreement [to arbitrate] referred to in article II or a duly certified copy thereof." A copy of the Award is attached as Myatt Decl. Ex. A. A copy of the documents constituting the agreement to arbitrate, in the form of a copy of the Spain-Venezuela Treaty, and Clorox Spain's Notice of Arbitration, in English, are attached as Ex. 4 and Myatt Decl. Ex. C.

47. Under the FAA, the Court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the New

York Convention. 9 U.S.C. § 207. None of the New York Convention grounds for denying recognition and enforcement of an award apply in this case.

48. For the foregoing reasons, Clorox Spain is entitled to an order (a) confirming the Award pursuant to the New York Convention, and (b) entering judgment in Clorox Spain's favor in the amount specified in the Award.

WHEREFORE, Clorox Spain requests that the Court enter an order:

(a) confirming the Award against Venezuela; and

(b) entering judgment against Venezuela and in Clorox Spain's favor, ordering Venezuela to pay Clorox Spain:

    (i) $104,102,806 in principal;

    (ii) Pre-award interest on that principal at the interest rate on ten-year U.S. bonds compounded annually, calculated from September 3, 2014 until August 9, 2023;

    (iii) Post-award interest on that principal at the interest rate on ten-year U.S. bonds compounded annually, calculated from August 9, 2023 until full payment of the Award;

    (iv) $4,959,729.27 in legal costs and expenses incurred by Clorox Spain; and

    (v) Post-award interest on those legal costs and expenses at the interest rate on ten-year U.S. bonds compounded annually, calculated from August 9, 2023 until full payment of the Award.

Dated: July 16, 2024                                    Respectfully submitted,

/s/ Miguel Estrada

Rahim Moloo, N.Y. Bar #4628616                          Miguel Estrada, D.C. Bar #456289
rmoloo@gibsondunn.com                                   mestrada@gibsondunn.com
Jason Myatt, N.Y. Bar #4450599                          GIBSON, DUNN & CRUTCHER LLP
jmyatt@gibsondunn.com                                   1050 Connecticut Avenue, N.W.
GIBSON, DUNN & CRUTCHER LLP                             Washington, DC  20036
200 Park Avenue                                         Telephone:  202.955.8500
New York, NY 10166                                      Facsimile:  202.467.0539
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Petitioner Clorox Spain S.L.*