**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Clorox Spain S.L.,<br><br>Petitioner,<br><br>v.<br><br>The Bolivarian Republic of Venezuela,<br><br>Respondent. | Civil Action No. 1:24-cv-02060-SLS |

**RESPONDENT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE ITS ANSWER OR AN AMENDED ANSWER**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................1

BACKGROUND ....................4

A. The Arbitration and the Award ....................4

B. The Petition, the Attempts at Service, and the Answer Filed at CAPA's Direction ......6

C. The December 12, 2025 Instrument and the Stay ....................10

D. The Events of 2026 ....................11

E. The Procuraduría's Position ....................13

LEGAL STANDARD ....................14

ARGUMENT ....................16

I. THE REPUBLIC HAS NOT BEEN SERVED, AND THE COURT LACKS PERSONAL JURISDICTION OVER IT ....................16

A. Service Did Not Comply With 28 U.S.C. § 1608(a) ....................16

B. The Answer of December 10, 2025 Did Not Waive the Defense, Because It Was Not the Republic's Answer ....................23

C. The Action Should Be Dismissed ....................25

II. IN THE ALTERNATIVE, THE REPUBLIC HAS NEVER PLEADED, AND EXHIBIT A SHOULD BE RECEIVED AS ITS ANSWER ....................28

III. ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED ....................29

A. The Amendment Is Necessary So That the Republic's Pleading States the Republic's Position....29

B. There Has Been No Undue Delay....31

C. The Republic Acts in Good Faith, Not with a Dilatory Motive....32

D. Petitioner Will Suffer No Undue Prejudice....33

E. The Amendment Is Not Futile....34

1. The Republic Is Not Bound by the December 12, 2025 Instrument....34

2. The Amounts Petitioner Seeks Are Not Liquidated, and Post-Judgment Interest Is Governed by § 1961....37

3. The Reservation of Immunity from Attachment and Execution....39

4. The Fourth and Fifth Defenses Do Not Make the Amendment Futile....40

5. The Sixth Defense Restates the Grounds of This Motion....43

F. Alternatively, the Added Matter Is Properly Pleaded Under Rule 15(d)....43

CONCLUSION....44

# TABLE OF AUTHORITIES

## Cases

*A-J Marine, Inc. v. Corfu Contractors, Inc.*, 810 F. Supp. 2d 168 (D.D.C. 2011)............33, 34

*Air Canada Inc. v. Bolivarian Republic of Venezuela*, No. 24-cv-2249 (JDB), 2026 U.S. Dist. LEXIS 183930 (D.D.C. Aug. 14, 2026), *appeal filed* (D.C. Cir. Sept. 15, 2026)...............9, 30

*Angellino v. Royal Family Al-Saud*, 688 F.3d 771 (D.C. Cir. 2012) ................1, 14, 16, 22, 26

*Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996) ...................................15, 32

*Autera v. Robinson*, 419 F.2d 1197 (D.C. Cir. 1969) .....................................................35, 36

*Azadeh v. Gov't of the Islamic Republic of Iran*, 318 F. Supp. 3d 90 (D.D.C. 2018)........20, 22

*Bainbridge Fund Ltd. v. Republic of Argentina*, 102 F.4th 464 (D.C. Cir. 2024) ............39, 40

*Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26 (D.C. Cir. 2015) ....................18, 26

*Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39 (D.D.C. 2008) ..........................22

*BG Group PLC v. Republic of Argentina*, 572 U.S. 25 (2014) ..............................................42

*Bronson v. Borst*, 404 A.2d 960 (D.C. 1979) .........................................................................35

*CapitalKeys, LLC v. Democratic Republic of Congo*, No. 15-cv-2079 (KBJ) (D.D.C. June 3, 2021), ECF No. 76, *aff'd*, No. 21-7070, 2022 U.S. App. LEXIS 20367 (D.C. Cir. July 22, 2022) ....................................................................................................................23, 40

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080 (D.C. Cir. 1998).15, 32

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 20-mc-40 (LJV), 2021 U.S. Dist. LEXIS 90029 (W.D.N.Y. May 11, 2021) ............................................................27

*Casa Express Corp. v. Bolivarian Republic of Venezuela*, No. 21-mc-23103, 2021 U.S. Dist. LEXIS 221512 (S.D. Fla. Nov. 17, 2021) ..................................................................18, 21

*Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200 (D.C. Cir. 2015) ..........................41, 42

*ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1, 2022 U.S. Dist. LEXIS 149512 (D.D.C. 2022) .........................................................19, 21, 38

*Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321 (D.C. Cir. 2014)................41

*Conley v. Gibson*, 355 U.S. 41 (1957) .....................................................................................29

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100 (D.D.C. 2017), and Order, No. 16-cv-661 (RC) (D.D.C. Mar. 25, 2017), ECF No. 31 .................38, 43

*Doe v. Islamic Republic of Iran*, No. 26-cv-1557 (CRC), 2026 U.S. Dist. LEXIS 211116 (D.D.C. Sept. 17, 2026) ..........................................................................................................20

*Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608 (D.C. Cir. 2024)....23, 35, 37

*Dove v. WMATA*, 221 F.R.D. 246 (D.D.C. 2004)...................................................................33

*Estate of Hirshfeld v. Islamic Republic of Iran*, 235 F. Supp. 3d 45 (D.D.C. 2017).........20, 22

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835 (D.C. Cir. 2006) ....................29, 32

*Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74 (D.C. Cir. 2014) ....................19

*Foman v. Davis*, 371 U.S. 178 (1962) ....................15, 29

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990)...14, 16, 26

*Gration v. Islamic Republic of Iran*, No. 21-cv-1859 (BAH), 2023 U.S. Dist. LEXIS 141944 (D.D.C. Aug. 15, 2023)....................19

*Guar. Tr. Co. v. United States*, 304 U.S. 126 (1938)....................3, 25, 28, 29

*Hall v. CIA*, 437 F.3d 94 (D.C. Cir. 2006)....................15, 43, 44

*Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339 (D.C. Cir. 1997)..........15, 30, 33

*Holker v. Parker*, 11 U.S. (7 Cranch) 436 (1813)....................35

*James Madison Ltd. v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996)....................15, 34

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ....................37

*Karcher v. Islamic Republic of Iran*, 249 F. Supp. 3d 557 (D.D.C. 2017)....................19, 22

*Library of Congress v. Shaw*, 478 U.S. 310 (1986) ....................40

*Light v. Wolf*, 816 F.2d 746 (D.C. Cir. 1987) ....................14, 18, 22, 25

*LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871 (D.C. Cir. 2021)....................41, 42

*Makins v. District of Columbia*, 277 F.3d 544 (D.C. Cir. 2002), *certified question answered*, 861 A.2d 590 (D.C. 2004) (en banc), *and vacated and remanded*, 389 F.3d 1303 (D.C. Cir. 2004) (per curiam) ....................34

*Makins v. District of Columbia*, 861 A.2d 590 (D.C. 2004) (en banc)....................33, 34, 35

*Mann v. Castiel*, 681 F.3d 368 (D.C. Cir. 2012)....................14, 17, 22, 23

*Morgan v. FAA*, 262 F.R.D. 5 (D.D.C. 2009)....................15, 34

*NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088 (D.C. Cir. 2024) ....................41, 42

*Nwachukwu v. Karl*, 222 F.R.D. 208 (D.D.C. 2004) ....................15, 32, 33

*Pfizer, Inc. v. Gov't of India*, 434 U.S. 308 (1978) ....................28

*Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543 (D.C. Cir. 1987) ............29, 32

*Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576 (D.C. Cir. 2020) .....42

*Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771 (D.C. Cir. 2022) ......41

*Pueblo of Santa Rosa v. Fall*, 273 U.S. 315 (1927)....................23

*Relvas v. Islamic Republic of Iran*, No. 14-cv-1752 (RCL), 2016 U.S. Dist. LEXIS 188404 (D.D.C. Feb. 18, 2016) ....................20

*Republic of Sudan v. Harrison*, 587 U.S. 1 (2019) ....................................................14, 16, 19

*SACE S.p.A. v. Republic of Paraguay*, 243 F. Supp. 3d 21 (D.D.C. 2017) ............................40

*Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, 23 F.4th 1036 (D.C. Cir. 2022) ..................................................................................1, 17, 21

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993) ...................................................................................42

*Tenaris S.A. v. Bolivarian Republic of Venezuela*, No. 18-cv-1371 (CRC), 2020 U.S. Dist. LEXIS 106397 (D.D.C. June 17, 2020).....................................................................38

*Themis Capital, LLC v. Democratic Republic of Congo*, 881 F. Supp. 2d 508 (S.D.N.Y. 2012) ..........................................................................................................23, 40

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-cv-1457 (TJK), 2018 U.S. Dist. LEXIS 211469, 2018 WL 6605633 (D.D.C. Dec. 17, 2018)...................................21, 22

*TJGEM LLC v. Republic of Ghana*, 26 F. Supp. 3d 1 (D.D.C. 2013), *aff'd*, No. 14-7036, 2015 U.S. App. LEXIS 10396 (D.C. Cir. June 9, 2015)...............................................................23

*Missouri ex rel. Schmitt v. People's Republic of China*, No. 1:20-cv-99-SNLJ, 2021 U.S. Dist. LEXIS 89733 (E.D. Mo. May 11, 2021)...........................................................22

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994)..................14, 16

*Trapote v. Bolivarian Republic of Venezuela*, 729 F. Supp. 3d 34 (D.D.C. 2024)......14, 18, 21

*United States v. Beebe*, 180 U.S. 343 (1901)...........................................................................35

*United States v. Hicks*, 283 F.3d 380 (D.C. Cir. 2002)....................................................15, 43

*United States v. Mahoney*, 247 F.3d 279 (D.C. Cir. 2001)......................................................36

*United States v. Torres*, 115 F.3d 1033 (D.C. Cir. 1997) ......................................................42

*Venezuela US SRL v. Bolivarian Republic of Venezuela*, 178 F.4th 679 (D.C. Cir. 2026) ....10, 12, 29, 33, 39

*Watch Tower Bible & Tract Soc'y of Pa. v. Russian Fed'n*, 804 F. Supp. 3d 153 (D.D.C. 2025), *recons. granted in part and dismissal vacated*, No. 24-cv-2523 (RC), 2026 U.S. Dist. LEXIS 163758 (D.D.C. July 23, 2026) ......................................................................22

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154 (D.C. Cir. 2002) .......40

**Foreign Decisions**

Tribunal fédéral [Swiss Federal Tribunal], Judgment 4A_306/2019 (Mar. 25, 2020), ATF 146 III 142..................................................................................................5, 40

Tribunal fédéral [Swiss Federal Tribunal], Judgment 4A_398/2021 (May 20, 2022) ..........5, 6

Tribunal fédéral [Swiss Federal Tribunal], Judgment 4A_486/2023 (Apr. 26, 2024) ..............6

**Statutes and Rules**

28 U.S.C. § 517.........................................................................................................12

28 U.S.C. § 1330(b) ........ passim
28 U.S.C. § 1605(a)(6) ........ 30, 41, 42
28 U.S.C. § 1608(a) ........ passim
28 U.S.C. § 1608(d) ........ 26
28 U.S.C. § 1608(e) ........ 18
28 U.S.C. §§ 1609–1611 ........ 39, 40
28 U.S.C. § 1610(c) ........ 2, 11, 37, 39, 40
28 U.S.C. § 1961 ........ 37, 38, 39
Fed. R. Civ. P. 4(j)(1) ........ 14
Fed. R. Civ. P. 7(b)(1) ........ 19
Fed. R. Civ. P. 8(d)(2)–(3) ........ 39
Fed. R. Civ. P. 12(b)(2), (5) ........ 4, 14, 43
Fed. R. Civ. P. 12(h)(1) ........ 23, 43
Fed. R. Civ. P. 15(a)(2) ........ 4, 15, 29, 43
Fed. R. Civ. P. 15(d) ........ 15, 43, 44
Fed. R. Civ. P. 44.1 ........ 32
Fed. R. Civ. P. 55(b)(1) ........ 18
Fed. R. Civ. P. 77(c)(2)(D) ........ 18
Fed. R. Evid. 201(b)(2) ........ 12
LCvR 5.1(h) ........ 10
LCvR 7(i) ........ 44

**Regulations**

31 C.F.R. § 591.202 ........ 37
31 C.F.R. § 591.407 ........ 37
31 C.F.R. § 591.506 ........ 37

**Other Authorities**

Statement of Interest of the United States and Exhibit A thereto (Letter from Ambassador Michael G. Kozak, U.S. Department of State, Mar. 10, 2026), *Stansell v. Revolutionary Armed Forces of Colombia*, No. 16-mc-405 (LGS) (SN) (S.D.N.Y. Mar. 11, 2026), ECF Nos. 621, 621-1 ........ 11, 12, 27

Notice of Appearance (ECF No. 361), Letters (ECF Nos. 378, 625, 629), and Orders (ECF Nos. 600, 612, 626, 632), *Stansell v. Revolutionary Armed Forces of Colombia*, No. 16-mc-405 (LGS) (SN) (S.D.N.Y. 2021–2026) ........ 12, 27, 28

Letter from Ambassador Michael G. Kozak, U.S. Department of State, to Deputy Assistant Attorney General Brenna Jenny (Aug. 29, 2025), *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, No. 19-cv-10023 (KPF) (S.D.N.Y. Sept. 2, 2025), ECF No. 393-1, and *Air Canada Inc. v. Bolivarian Republic of Venezuela*, No. 24-cv-2249 (JDB) (D.D.C. Nov. 17, 2025), ECF No. 11-4 ....................9, 24

Declaration of Juan Pablo Segura, Assistant Secretary of State for Western Hemisphere Affairs, *United States v. Maduro Moros*, No. 11-cr-205 (AKH) (S.D.N.Y. Oct. 2, 2026), ECF No. 338-1 ....................12

Press Statement, U.S. Department of State, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023)....................12

Amended Order and Final Judgment (ECF No. 50), *Venezuela US SRL v. Bolivarian Republic of Venezuela*, No. 22-cv-3822 (JMC) (D.D.C. Aug. 14, 2025) ....................39

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ....................16

D.C. Rule of Professional Conduct 1.2(a) ....................35

Restatement (Third) of the Law Governing Lawyers § 27 cmt. d (2000) ....................34

Wright & Miller, Federal Practice and Procedure: Civil 2d § 1488 (1990 & Supp. 1997).....15

Agreement Between the Kingdom of Spain and the Bolivarian Republic of Venezuela on the Reciprocal Promotion and Protection of Investments, Nov. 2, 1995 (Pet. Exs. 3–4, ECF Nos. 1-3, 1-4)....................4, 5, 6, 40, 41

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, arts. V(1)(a), V(1)(c), V(1)(e), V(2)(b) .................... passim

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ....................1, 6, 16

Constitución de la República Bolivariana de Venezuela, arts. 192, 247 ....................1, 2, 13, 24

Decreto con Rango, Valor y Fuerza de Ley Orgánica de la Procuraduría General de la República (LOPGR), arts. 2, 77, 82, 85, 93, 108....................13, 14, 16, 24, 36

Código de Procedimiento Civil (Venezuela), art. 154....................36

Código Civil (Venezuela), art. 1.688....................36

## PRELIMINARY STATEMENT

Respondent the Bolivarian Republic of Venezuela (the "Republic") appears in this action through the Procuraduría General de la República, the organ that holds, under Article 247 of the Republic's Constitution and Article 2 of its organic law, the exclusive competence to represent the Republic in judicial proceedings — a competence that "may not be exercised by any other organ or official of the State" without the Procurador General's prior and express substitution. Declaration of Henry Rodríguez Facchinetti on the Law of the Bolivarian Republic of Venezuela (Ex. D) ("Rodríguez Law Decl.") ¶¶ 4–5. The Republic has never been served. The Foreign Sovereign Immunities Act prescribes four methods of serving a foreign state, in an order that a plaintiff "must" follow, *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012), and it makes personal jurisdiction over the state depend on service "made under section 1608." 28 U.S.C. § 1330(b). Petitioner told this Court that the methods must be attempted "in descending order of preference," ECF No. 5 at 2, and then passed over one of them on its own authority. Its request under the Hague Service Convention was never executed on the Procurador General, which is what the law of the Republic and the Court of Appeals require, *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1040–41 (D.C. Cir. 2022); it never asked the Clerk to mail the papers to the Republic's Minister of Foreign Affairs under § 1608(a)(3); and it went directly to the diplomatic channel of § 1608(a)(4), which the statute opens only "if service cannot be made within 30 days under paragraph (3)," on the strength of a letter to the Clerk in which it declared the third method unavailable. ECF No. 9-1. It did not move the Court for leave to do so, as the plaintiffs in both decisions it cited to the Clerk had done; no judge was asked to decide, and none decided, that the statute's condition was met. The Department of State then delivered the papers in Washington to a "Presidential Commissioner for Foreign Relations"

designated by a body the Republic has never recognized as having any authority to act for it, while disclaiming any view on "whether service was properly effected." ECF No. 12 at 1 & n.*, 3–5.

What happened in the Republic's absence is the rest of this case. It should have been the Republic defending the Petition: the Procuraduría had defended the arbitration that produced the Award for eight years, from the Notice of Arbitration to the Swiss Federal Tribunal, and it alone had the knowledge, and under the law of the Republic the authority, to answer. Instead, lawyers engaged by the Consejo de Administración y Protección de Activos ("CAPA") — a body that the National Assembly elected in 2015 (the "2015 National Assembly")[1] purported to create in December 2022, and that no organ of the Republic has ever recognized — appeared in the Republic's name, obtained two extensions, and filed an answer that said nineteen times that "[t]he Republic is represented here by" CAPA, disclaimed all knowledge of the Republic's own arbitration, and pleaded a single defense premised on the proposition that the Republic's lawyers in the arbitration were not the Republic's lawyers. ECF No. 20 ¶¶ 17–23, 25–29, 34–37, 44–46 & at 22. Two days later, a lawyer of the same firm who had never entered an appearance signed a "Conditional Partial Settlement Agreement" (the "Instrument") under which, upon the affirmance in another case, the Republic's "defenses under the New York Convention" would be "deemed waived," a consent judgment for well over US$100 million would be entered against it, and its right of appeal and its protection under 28 U.S.C. § 1610(c) would be surrendered. Ex. B, Annex

[1] The Answer, the Instrument, and Petitioner's filings refer to the "National Assembly" or the "2015 National Assembly." The term denotes the legislature elected on December 6, 2015, whose members, after the five-year term fixed by Article 192 of the Constitution of the Republic, continued to act under that name and, by their own enactments, purported to extend their functions and to create bodies such as CAPA. The Republic uses the term because the record uses it. It does not concede that the 2015 National Assembly, or any body it purported to create, held authority under the Constitution and laws of the Republic to act for the Republic at any relevant time, and nothing in this memorandum or in the proposed pleading concedes that point. *See infra* note 4.

1, ¶¶ 2–4 & Ex. A thereto (filed under seal). No organ of the Republic engaged those lawyers, authorized any of those acts, or knew of them; the Procuraduría never heard from them. Declaration of Henry Rodríguez Facchinetti (Ex. C) ("Rodríguez Decl.") ¶¶ 10–13. The Republic was not before this Court while its defenses were being bargained away because Petitioner did not follow the statute, and because the papers that were delivered went to a body that was not the Republic's government.

That body's claim to act for the Republic rested on a single premise, repeated throughout the answer it directed: that CAPA "was appointed by the democratically-elected government of Venezuela that is recognized by the United States." ECF No. 20 ¶ 17. The Executive Branch has stated its recognition posture in its own words: in January 2023 it recognized the 2015 National Assembly as "the last remaining democratic institution in Venezuela"; in August 2025 it told a court that it "recognizes the 2015 National Assembly as the government of Venezuela"; and in March 2026 it recognized the government of President Delcy Rodríguez, "able to take action on behalf of Venezuela." *See infra* Background B, D. None of those statements identified any person authorized to appear for the Republic in the courts of the United States, and from October 2021 until May 2026 the question which counsel was authorized to act for the Republic's organs and instrumentalities was in active litigation in the federal courts; during the very weeks in which the Answer and the Instrument were filed here, one court had stayed four related proceedings pending its resolution of that question, and when it asked the United States, the United States declined to say. *See infra* Part I.C. Throughout that period the recognition decisions then in force limited what the Republic's government, and the Procuraduría through which it litigates, could do in the courts of the United States, *Guar. Tr. Co. v. United States*, 304 U.S. 126, 137 (1938); what they could

have done here, had the Republic been served, was a question for this Court, and it never reached the Court.

The Republic therefore moves, first, to dismiss this action for insufficient service of process and want of personal jurisdiction. Fed. R. Civ. P. 12(b)(2), (5); 28 U.S.C. §§ 1330(b), 1608(a). The answer of December 10, 2025 could not waive that defense, because it was not the Republic's answer; the Republic raises the defense in its first act before this Court, as Rule 12 requires. A court without personal jurisdiction over a foreign state cannot enter judgment against it, on the Instrument or on the Award, and the Republic asks that Petitioner's announced cross-motion for entry of judgment not be entertained until the Republic has been served and has responded. Second, and in the alternative, should the Court hold that service was sufficient, the Republic has still never pleaded. It asks that this proceeding be treated, as to the Republic, as beginning on the day it appeared through authorized counsel, and that Exhibit A be received as its answer; or, failing that, that it be granted leave under Rule 15(a)(2) to file Exhibit A as its Amended Answer. Under every branch of the motion the Instrument binds no one: it was signed by a person whom no organ of the Republic ever authorized to appear for it, let alone to compromise its defenses and consent to judgment against it. The Republic asks for what every defendant is entitled to: to be served as the statute requires, and to be heard through counsel it has actually chosen.

## BACKGROUND

### A. The Arbitration and the Award

Petitioner commenced arbitration against the Republic on May 18, 2015 under Article XI of the Agreement Between the Kingdom of Spain and the Bolivarian Republic of Venezuela on the Reciprocal Promotion and Protection of Investments (the "Treaty"), under the 2010 UNCITRAL Arbitration Rules, administered by the Permanent Court of Arbitration and seated in

Geneva. Award ¶¶ 4–6, 21, 23 (ECF No. 1-1).[2] Throughout the proceeding the Republic was represented by the Procuraduría General de la República, acting through the Procurador General and the Procuraduría's litigation staff together with outside counsel. Award ¶ 1; *see id.* ¶¶ 69, 117, 214, 218 (the Procuraduría appears in the English translation as the "Attorney General's Office"). The Procuraduría's Chief of Litigation (Gerente General de Litigio), who submits two declarations with this motion, is named in the Award among the Republic's representatives and attended the hearing on the Republic's behalf. *Id.* ¶¶ 1, 117; Rodríguez Decl. ¶¶ 3–5. No reference to the 2015 National Assembly, to any "interim government," or to CAPA appears anywhere in the Award.

The proceeding had three phases. On May 20, 2019, the Tribunal issued an award declining jurisdiction on the ground that Petitioner did not hold a protected investment. Award ¶¶ 204–205. The Swiss Federal Tribunal set that award aside by judgment of March 25, 2020. Tribunal fédéral [Swiss Federal Tribunal], Judgment 4A_306/2019 (Mar. 25, 2020), ATF 146 III 142; *see* Award ¶¶ 206–208 (recording the judgment, at ¶ 207, under the date of March 24, 2020). On remand the Tribunal rejected the Republic's abuse-of-process objection by award of June 17, 2021, *id.* ¶ 234, and the Swiss Federal Tribunal dismissed the Republic's application against that award on May 20, 2022, *id.* ¶ 259; *see* Judgment 4A_398/2021 (May 20, 2022). On August 9, 2023, the Tribunal issued the Final Award, finding a breach of Article V of the Treaty, Award ¶ 835; ordering the Republic to pay "USD 104,102,806 plus interest at the interest yield rate on ten-year U.S. bonds compounded annually, calculated from September 3, 2014 until full payment," *id.* ¶ 836, and costs of "USD 4,959,729.27 plus compound interest at the yield rate of ten-year U.S. bonds from the date of this award until the date of full payment," *id.* ¶ 839; ordering the cessation of the use of

[2] Citations to the "Award" are to the certified English translation filed as Exhibit B to the Declaration of Jason W. Myatt, ECF No. 1-1; the Spanish original is Exhibit A. The Award's operative paragraphs appear at ECF No. 1-1 at 389–90 (English) and 202–03 (Spanish).

certain trademarks, *id.* ¶ 838; declining to rule on Petitioner's claims under Articles III(1) and IV(1) of the Treaty, *id.* ¶ 837; and dismissing all other claims, *id.* ¶ 840. The Republic's application to set the Final Award aside was dismissed, to the extent admissible, on April 26, 2024. *See* Judgment 4A_486/2023 (Apr. 26, 2024); ECF No. 1 ¶ 37.[3]

### B. The Petition, the Attempts at Service, and the Answer Filed at CAPA's Direction

Petitioner filed this action on July 16, 2024, and the summons issued the next day. ECF Nos. 1, 3. Ordered to show cause why the case should not be dismissed for failure to prosecute, ECF No. 4, Petitioner responded that service on a foreign state "must be made by attempting the methods of service listed in descending order of preference in 28 U.S.C. § 1608(a)(1)-(4)"; that there was no special arrangement for service under § 1608(a)(1); that it had "initiated service under Section 1608(a)(2)" by transmitting a request to the Republic's Central Authority under the Hague Service Convention on August 16, 2024, received in Caracas on August 21, 2024; and that, "absent

[3] The record of the first phase includes an episode the Republic notes of particular importance. At 11:00 p.m. on May 25, 2017, after the penultimate day of the hearing, Petitioner sought leave to introduce a letter dated December 7, 2010 and a "Unanimous Written Consent of the Board of Directors" dated December 21, 2010 as Exhibit C-190. Award ¶ 120. The Republic challenged the document's authenticity the next morning, *id.* ¶ 122; the Tribunal reserved its decision on admissibility pending a forensic examination and appointed a forensic expert, who inspected the offices of The Clorox Company, Petitioner's parent, in Pleasanton, California on January 3 and 4, 2018. *Id.* ¶¶ 122, 138–194 (inspection at ¶ 175); Ex. A, Part III (Fifth Defense). In Procedural Order No. 11 of March 20, 2018, the Tribunal found that "the authenticity of Exh. C-190 cannot be established within the framework of these arbitral proceedings," declared the exhibit inadmissible, and ordered Petitioner to bear the costs of the forensic examination because the Republic's objections "were legitimate," while confirming that "there is no indication revealing Claimant's intent to deceive the Tribunal and/or Respondent." Award ¶ 195. The Swiss Federal Tribunal noted that the expert "was not in a position to confirm" the document's authenticity but, in light of the Tribunal's finding, declined to draw any conclusion adverse to Petitioner from the episode. Judgment 4A_398/2021, consid. 5.6 (translation). The challenge to the document and the forensic phase were the work of the Republic's own representation in the arbitration, conducted by the Procuraduría with outside counsel, Award ¶¶ 1, 117 — matters of which the Answer's authors disclaimed all knowledge. ECF No. 20 ¶¶ 17–23; *see infra* Part III.A.

a prompt response from Venezuela's Central Authority, Clorox Spain will proceed to service by diplomatic means in short order." ECF No. 5 at 2–4. The Court vacated the order to show cause and directed Petitioner to file a status report on its efforts to effect service by February 7, 2025. Minute Order (Dec. 9, 2024). On that date, Petitioner reported that it had "not received a response from Venezuela or its Central Authority" and that, absent a completed return by February 16, 2025, it "will proceed to service via diplomatic means by requesting the Clerk of Court's assistance in dispatching" the papers to the Department of State "for service on Venezuela. *See* 28 U.S.C. § 1608(a)(4)." ECF No. 8 at 1–2. Neither filing mentions § 1608(a)(3). On February 28, 2025, Petitioner asked the Clerk to dispatch the papers to the Department of State. Its request consisted of the Clerk's form, on which it marked the box for § 1608(a)(4) and left the box for § 1608(a)(3) blank, ECF No. 9, and a four-page letter to the Clerk. The letter stated that "service through diplomatic channels pursuant to 28 USC § 1608(a)(4) is the only method of service effectively available to Clorox at this time"; that "service cannot be made under Section 1608(a)(3)" because the Republic had objected to postal channels under the Convention and because "there is no currently recognized Venezuelan government and thus no recognized foreign minister"; and that the Department of State "will decide who receives the process, and its decision is entitled to deference." ECF No. 9-1 at 1, 3–4. It quoted statements made in other proceedings by counsel then appearing in the Republic's name that only § 1608(a)(4) was available. *Id.* at 1. Petitioner did not move the Court for authorization to proceed under § 1608(a)(4), and no order on the question was sought or entered. The Clerk dispatched the papers on March 7, 2025. ECF Nos. 10, 11.

According to the return of service, "[b]ecause the United States Embassy operations in Venezuela are currently suspended," the Department of State delivered the summons and Petition on July 18, 2025, under cover of a diplomatic note, to the "Presidential Commissioner for Foreign

Relations of the Bolivarian Republic of Venezuela in Washington, DC," with a request that the documents "be forwarded to the appropriate authority of the Bolivarian Republic of Venezuela," and with the statement that its performance of that function "should not be construed as an indication in any way of the United States' position or views on whether plaintiffs have properly complied with all statutory requirements of the FSIA, the status or character of a defendant, [or] whether service was properly effected." ECF No. 12 at 1 & n.*, 3–5. The Procuraduría's records reflect no receipt of the papers described in the return of service, whether from that person, from the Department of State, or from anyone else. Rodríguez Decl. ¶ 9. Nothing in the record indicates that the papers were forwarded to the Procurador General or to any other organ of the Republic.

On September 15, 2025, Ephraim Wernick of Vinson & Elkins LLP ("V&E"), without any authorization from the Procuraduría, entered an appearance for the Republic and, by consent, obtained an extension to October 26, 2025; the motion stated that the Republic's "counsel for this case have been retained," without saying by whom. ECF Nos. 13, 14 at 1; Minute Order (Sept. 16, 2025). A second extension followed, on a stipulation reporting that "[o]n October 14, 2025, the Parties began discussions aimed at resolving this instant litigation." ECF No. 18 at 1; Minute Order (Oct. 23, 2025). V&E filed the operative Answer on December 10, 2025. ECF No. 20. In response to nineteen paragraphs of the Petition describing the agreement to arbitrate, the arbitration, the Swiss proceedings, the terms of the Award, and the Award's status under the Convention, the Answer stated that "[t]he Republic lacks knowledge or information sufficient to form a belief about the truth of the allegations," and explained why in the following terms, repeated in abbreviated form in each of the other eighteen responses:

> The Republic is represented here by the Consejo de Administración y Protección de Activos ("CAPA"), which was appointed by the democratically-elected government of Venezuela that is recognized by the United States. CAPA manages the Republic's assets from the

> United States and runs parallel to the illegitimate government of Nicolás Maduro, which participated in the underlying Arbitration. The Republic disavows the Maduro regime and lacks any knowledge regarding its actions.

ECF No. 20 ¶ 17; *see id.* ¶¶ 18–23, 25–29, 34–37, 44–46. The Answer did not contest service, admitted personal jurisdiction, *id.* ¶ 7, and pleaded one defense: that "[t]he Award violates public policy under Article V(2)(b) of the New York Convention because the Republic was represented in the underlying arbitration by the illegitimate regime of Nicolás Maduro, rather than by CAPA." *Id.* at 22.[4] At the time, the Department of State's stated position, in a letter of August 29, 2025 submitted at the invitation of another court, was that "[t]hough the 2015 National Assembly's leadership has changed since we last submitted our views to the Court, the United States recognizes the 2015 National Assembly as the government of Venezuela." Letter from Ambassador Michael G. Kozak, Senior Bureau Official, Bureau of Western Hemisphere Affairs, U.S. Department of State, to the Department of Justice (Aug. 29, 2025), at 2, *filed in Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, No. 19-cv-10023 (KPF) (S.D.N.Y. Sept. 2, 2025), ECF No. 393-1, *and in Air Canada Inc. v. Bolivarian Republic of Venezuela*, No. 24-cv-2249 (JDB) (D.D.C. Nov. 17, 2025), ECF No. 11-4 (the "August 2025 Letter").

[4] CAPA was purportedly created by the 2015 National Assembly's December 30, 2022 reform of its Estatuto que Rige la Transición a la Democracia, published in Gaceta Legislativa No. 66 (Jan. 3, 2023). The Republic does not accept that the instruments by which the 2015 National Assembly purported to create CAPA and to define its powers were valid under the Constitution and laws of the Republic, and nothing in this memorandum or in the proposed pleading concedes that point. Rodríguez Law Decl. ¶ 14. The Sala Constitucional of the Tribunal Supremo de Justicia declared the Estatuto adopted on February 5, 2019 — of which the 2022 Reform purported to be a further reform — and the reform of that Estatuto adopted on December 26, 2020 absolutely null and without legal effect in its decisions No. 0006 of February 8, 2019 and No. 0274 of December 30, 2020. *Id.* ¶ 14. The Republic refers to those instruments only because the Answer of December 10, 2025 and the Instrument invoke them.

**C. The December 12, 2025 Instrument and the Stay**

On the day the Answer was filed, the parties jointly moved to stay all proceedings, reporting that they "have agreed in principle to a conditional partial settlement," the "specific terms" of which "depend in part on the outcome of ongoing litigation on appeal," and that "[s]hould the appellate court presiding over the related litigation affirm the lower court's decision, the Parties have agreed to file a stipulation of judgment confirming Petitioner's Award in this case." ECF No. 19 at 2. Two days later, on December 12, 2025, the Instrument was executed — for Petitioner by Jason W. Myatt of Gibson, Dunn & Crutcher LLP, and, in the space designated "Counsel for Respondent, the Bolivarian Republic of Venezuela," by Camilo Cardozo of V&E, whom no organ of the Republic had authorized to act for it. Ex. B, Annex 1, at 4.[5] The "related litigation" was *Venezuela US SRL v. Bolivarian Republic of Venezuela*, then pending in the D.C. Circuit. Ex. B, Annex 1, recitals.

The Instrument provided, in substance, that upon an "Affirmance" in *Venezuela US SRL* — defined as any disposition leaving in place the district court's holding that the New York Convention does not bar recognition on the ground that the Republic had been represented in the arbitration by attorneys appointed by Nicolás Maduro — "Respondent's defenses under the New York Convention shall be deemed waived" and the parties would within fourteen days file a stipulation for entry of the attached proposed final judgment, *id.* ¶ 2; that absent an Affirmance the Republic could assert only the Maduro-representation defense and "hereby waive[d] any other

[5] The Instrument is filed under seal, pursuant to LCvR 5.1(h) and the Republic's accompanying motion for leave to file under seal, as Annex 1 to the Declaration of Miguel Andrés Sánchez-Ross (Exhibit B) ("Sánchez-Ross Decl."), which authenticates it. Sánchez-Ross Decl. ¶¶ 2, 4. It is filed under seal in deference to paragraph 5 of the Instrument, which permits its terms to be "disclosed to the Court and, to the extent necessary, filed on the public docket to obtain the relief contemplated herein," and to Petitioner's previous offer to file it under seal. ECF No. 24 at 2 n.1. The Republic does not, by filing it, adopt or ratify it, and takes no position on its continued confidentiality.

defenses to recognition of the Award," *id.* ¶ 3; that the Republic waived its immunity from attachment and execution under 28 U.S.C. § 1610(c) after six months, *id.* ¶ 4; and that "the person signing on [each Party's] behalf is duly authorized to do so," *id.* ¶ 8. The attached stipulation would have had the Republic waive "all defenses to liability or to entry of judgment," including "any defense based upon sovereign immunity, jurisdiction, or venue," and "all right to appeal," and the attached proposed judgment awards interest at the Award's rate "until full payment." Ex. B, Annex 1, Ex. A thereto. On December 12, 2025, the Court stayed all deadlines "until further order of this Court" and directed periodic status reports. Minute Orders (Dec. 12, 2025; Mar. 13, Apr. 1, June 2, Aug. 27, 2026).

**D. The Events of 2026**

Between March and June 2026, Gibson Dunn and V&E filed three status reports on the progress of the appeal. ECF Nos. 21, 22, 23. In March 2026 the United States recognized President Delcy Rodríguez's government. On March 5, 2026, the Department of State "issued a statement announcing the normalization of relations with Venezuela under interim President Delcy Rodriguez"; on March 7, the President stated that "this week we have formally recognized the Venezuelan government [under Delcy Rodriguez]" and that "[w]e've actually legally recognized them"; and the Department has stated that "the United States is recognizing Delcy Rodriguez as the sole Head of State, able to take action on behalf of Venezuela." Statement of Interest of the United States at 1–2, *Stansell v. Revolutionary Armed Forces of Colombia*, No. 16-mc-405 (LGS) (SN) (S.D.N.Y. Mar. 11, 2026), ECF No. 621 ("Statement of Interest"), & Ex. A thereto, Letter from Ambassador Michael G. Kozak, Senior Bureau Official, Bureau of Western Hemisphere Affairs, U.S. Department of State (Mar. 10, 2026), ECF No. 621-1, at 3 ("Kozak Letter"); *see also* Decl. of Juan Pablo Segura, Assistant Secretary of State for Western Hemisphere Affairs, ¶¶ 6–7,

*United States v. Maduro Moros*, No. 11-cr-205 (AKH) (S.D.N.Y. Oct. 2, 2026), ECF No. 338-1 ("Segura Decl.") (recognition of Delcy Rodríguez "as the sole head of state, able to speak for and take action on behalf of Venezuela").[6] Petitioner has described the same event in its own terms: the 2015 National Assembly "is no longer recognized as the government of the Republic, having been replaced by the government of Acting President Delcy Rodríguez." ECF No. 24 at 2; *see id.* at 3; ECF No. 27 at 2. On June 12, 2026, the D.C. Circuit decided *Venezuela US SRL*, 178 F.4th 679 (D.C. Cir. 2026).

On June 26, 2026, Petitioner reported that V&E "informed Petitioner that it has been unable to obtain instructions from the Republic and therefore cannot execute the previously agreed stipulation on behalf of the Republic," and that V&E "has been unable to ascertain whether it continues to be authorized to appear on Respondent's behalf." ECF No. 24 at 2. Petitioner acknowledged that "the Republic is entitled to select its own lawyers in this proceeding." *Id.* On July 3, 2026, the Court ordered the Republic to state by July 20, 2026 whether it would continue with counsel of record or obtain new counsel. The Procuraduría engaged undersigned counsel,

---

[6] The Statement of Interest was filed by the United States Attorney for the Southern District of New York under 28 U.S.C. § 517 in response to that court's order of January 12, 2026 inviting the Government's views on "the authority-to-represent issue," Statement of Interest at 1 (quoting Order, *Stansell*, ECF No. 612); its Exhibit A is the letter of March 10, 2026 from Ambassador Michael G. Kozak, Senior Bureau Official of the Bureau of Western Hemisphere Affairs, that the Statement transmits. Statement of Interest at 1; Kozak Letter at 2. The Segura Declaration is the declaration of the Assistant Secretary of State for Western Hemisphere Affairs, filed by the United States on October 2, 2026 in *United States v. Maduro Moros*. Segura Decl. ¶ 1. The Republic cites these filings for the statements of the Executive Branch they contain, of which the Court may take judicial notice, Fed. R. Evid. 201(b)(2), and not as evidence of any other fact. Both quote one sentence of the Department of State's press statement of January 3, 2023, *Venezuela's Interim Government and the 2015 National Assembly*, from which the quotation in the Preliminary Statement is taken. Kozak Letter at 3 & n.2; Segura Decl. ¶ 4 & n.3. The United States "otherwise respectfully decline[d] to opine on the pending dispute regarding 'which counsel is authorized to represent certain Venezuelan state-owned entities.'" Statement of Interest at 2; *see* Order at 2, *Stansell*, ECF No. 632.

who entered an appearance on July 22, 2026. ECF No. 25. V&E withdrew two days later. ECF No. 26. Petitioner thereafter asked undersigned counsel to execute the stipulation contemplated by the Instrument; the Republic declined. Sánchez-Ross Decl. ¶ 3; Rodríguez Decl. ¶ 14. In the joint status report of September 21, 2026, the Republic stated that the Instrument "was intended to be executed by representatives who were not authorized by the Republic" and that "[t]he Republic, through its Procuraduría General, never authorized the execution of any agreement or the compromise of its defenses in this action, in accordance with the laws of Venezuela." ECF No. 27 at 4. Petitioner stated that it "intends to move to enforce the Partial Settlement Agreement and for entry of a final judgment." *Id.* at 3. The Court set this motion for October 5, 2026 and Petitioner's "combined opposition and cross-motion for entry of judgment" for October 26, 2026. Minute Order (Sept. 22, 2026).

### E. The Procuraduría's Position

The Procuraduría General de la República is the organ that, under Article 247 of the Constitution of the Republic and Article 2 of the Organic Law of the Procuraduría General de la República ("LOPGR"), represents and defends the Republic's patrimonial interests (intereses patrimoniales) in judicial and extrajudicial proceedings. Rodríguez Decl. ¶ 1; Rodríguez Law Decl. ¶¶ 4–6. It represented the Republic in the arbitration that produced the Award. Award ¶ 1; Rodríguez Decl. ¶¶ 3–7. At no point did it engage V&E or Messrs. Wernick, Cardozo, Sanchez, or Gilbertson to represent the Republic in this action; it issued no power of attorney (poder) in their favor; and it gave no authorization to compromise the Republic's defenses, to waive its immunities or its right of appeal, or to consent to the entry of judgment. Rodríguez Decl. ¶¶ 10, 12–13. The Procuraduría has not ratified, and does not ratify, the Instrument or the stipulation

attached to it, and it has instructed undersigned counsel to withdraw the Article V(2)(b) defense and to conform the Republic's pleading to the Republic's actual position. *Id.* ¶¶ 14–15.

Under the law of the Republic, process in an action against the Republic is served on the Procurador General de la República, who must be notified of the admission of every action brought against the Republic's patrimonial interests. LOPGR arts. 93, 108. The provisions of the law of the Republic that govern the authority of those who litigate in its name are set out in Part III.E.1 below and in the Rodríguez Law Declaration.

## LEGAL STANDARD

A defendant may move, before pleading, to dismiss for lack of personal jurisdiction and for insufficient service of process. Fed. R. Civ. P. 12(b)(2), (5). Service on a foreign state is governed by 28 U.S.C. § 1608(a), Fed. R. Civ. P. 4(j)(1), and "[p]ersonal jurisdiction under FSIA exists so long as subject matter jurisdiction exists and service has been properly made pursuant to 28 U.S.C. § 1608." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 442 (D.C. Cir. 1990); *see* 28 U.S.C. § 1330(b). Section 1608(a) sets out four methods of service, and a plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino*, 688 F.3d at 773 (quotation omitted); a party "cannot progress from one method to another until it has either attempted the preceding method or determined that it is plainly inapplicable," *Trapote v. Bolivarian Republic of Venezuela*, 729 F. Supp. 3d 34, 36 (D.D.C. 2024). The Court of Appeals requires strict compliance with § 1608(a). *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994); *see Republic of Sudan v. Harrison*, 587 U.S. 1, 19 (2019). When service is challenged, "the party on whose behalf service is made has the burden of establishing its validity," *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (quotation omitted); *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir.

2012), and "a defendant's knowledge that a complaint has been filed is not sufficient to establish that the district court has personal jurisdiction over the defendant," *id.* at 373.

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." Leave is to be given absent a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[I]n most cases delay alone is not a sufficient reason for denying leave," *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1084 (D.C. Cir. 1998) (quoting Wright & Miller, Federal Practice and Procedure: Civil 2d § 1488 (1990 & Supp. 1997)); *see Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996). The party opposing amendment bears the burden of showing why leave should be denied, *Morgan v. FAA*, 262 F.R.D. 5, 9 (D.D.C. 2009); *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004); an amendment is futile only if the proposed pleading would not survive a motion directed to it, *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); and the same standard governs a motion to amend an answer, *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343–45 (D.C. Cir. 1997). Rule 15(d) permits a party, "on just terms," to set out "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," and such motions are "freely granted" absent undue delay or prejudice. *Hall v. CIA*, 437 F.3d 94, 100–01 (D.C. Cir. 2006); *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002).

## ARGUMENT

### I. THE REPUBLIC HAS NOT BEEN SERVED, AND THE COURT LACKS PERSONAL JURISDICTION OVER IT

#### A. Service Did Not Comply With 28 U.S.C. § 1608(a)

Section 1608(a) prescribes four methods of serving a foreign state. The first is a special arrangement between the parties; the second is service "in accordance with an applicable international convention on service of judicial documents"; the third, "if service cannot be made under paragraphs (1) or (2)," is a mailing "addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned"; and the fourth, "if service cannot be made within 30 days under paragraph (3)," is transmission through the Secretary of State "through diplomatic channels." 28 U.S.C. § 1608(a)(1)–(4). The methods are sequential, *Angellino*, 688 F.3d at 773, and Congress described the fourth as "a method of last resort," to be used "if service could not be made by mail within 30 days." H.R. Rep. No. 94-1487, at 24 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6624. The Supreme Court describes it the same way, as the method a plaintiff "may turn to" if its attempt under the third "fails." *Harrison*, 587 U.S. at 19. Strict compliance with the section is required, *Transaero*, 30 F.3d at 154, and personal jurisdiction over the Republic depends on it. 28 U.S.C. § 1330(b); *Foremost-McKesson*, 905 F.2d at 442.

Petitioner began correctly. There is no special arrangement for service between Petitioner and the Republic, and Petitioner transmitted a request under the Hague Service Convention to the Republic's Central Authority, which, by Petitioner's account, received it in Caracas on August 21, 2024. ECF No. 5 at 2–3. That request was never executed. Under the law of the Republic, process in an action against the Republic is served on the Procurador General de la República, LOPGR arts. 93, 108, and the Court of Appeals has held that service on the Republic under the Convention is not complete until the Central Authority has served the Procurador General in accordance with

that law. *Saint-Gobain*, 23 F.4th at 1040–41. Petitioner itself reported that it had "not received a response from Venezuela or its Central Authority." ECF No. 8 at 1. Service under § 1608(a)(2) therefore was never made, and the statute directed Petitioner to the third method.

Petitioner did not attempt it. Having told the Court that the four methods must be attempted "in descending order of preference," ECF No. 5 at 2, Petitioner announced that it would "proceed to service by diplomatic means," *id.* at 4; ECF No. 8 at 2, and then asked the Clerk to dispatch the papers under § 1608(a)(4), on a form that left the § 1608(a)(3) box blank and under cover of a letter declaring that "service cannot be made under Section 1608(a)(3)" because of the Republic's objection to postal channels under the Convention and because "there is no currently recognized Venezuelan government and thus no recognized foreign minister." ECF No. 9; ECF No. 9-1 at 3. At no point did Petitioner request the clerk's mailing to the Republic's Minister of Foreign Affairs that § 1608(a)(3) prescribes, and at no point did it ask the Court to decide whether that method was available to it. Section 1608(a)(4) is available only "if service cannot be made within 30 days under paragraph (3)." Paragraph (3) was never tried, and the only determination that it could not be tried was Petitioner's own, addressed to a ministerial officer. The resulting delivery of the papers to a "Presidential Commissioner" in Washington, D.C. — a person designated by the authorities the 2015 National Assembly purported to install, whom the Republic recognizes as having no authority to receive process for it, Ex. A ¶ 50 — was not service "made under section 1608," 28 U.S.C. § 1330(b), and the Department of State, in making it, expressly took no position on "whether service was properly effected." ECF No. 12 at 1 n.*. It is irrelevant whether the papers reached someone. "[A] defendant's knowledge that a complaint has been filed is not sufficient to establish that the district court has personal jurisdiction over the defendant," *Mann*, 681 F.3d at

373, and the Procuraduría, the organ on which process against the Republic is served, in any event has no record of receiving them. Rodríguez Decl. ¶ 9.

A plaintiff's letter to the Clerk is not the determination the statute requires. Section 1608(a) assigns the Clerk a ministerial task — to address and dispatch what the plaintiff supplies — and gives the Clerk no authority to decide that service "cannot be made" under paragraph (3); the Clerk's certificate here records only what was dispatched. ECF No. 11. Under the Rules, the Clerk may act only on a matter "that does not require the court's action," Fed. R. Civ. P. 77(c)(2)(D), and whether a plaintiff may bypass a step that Congress made a precondition to the diplomatic channel is not such a matter. It turns on the effect of a treaty objection on a federal statute and, on Petitioner's own second ground, on a judgment about which government the United States recognized and what follows from it — questions for a court, on which the Act "confers upon the district court responsibilities with regard to the sensitive task of service of process on a foreign government." *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015). Congress's scheme for suits against foreign states reserves determinations of that kind to the court: no default judgment may be entered against a foreign state "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court," 28 U.S.C. § 1608(e), although for ordinary defendants the Clerk may enter one, Fed. R. Civ. P. 55(b)(1), and the plaintiff bears the burden of establishing that the method it chose was the one the statute permitted, *Light*, 816 F.2d at 751. That is why the plaintiffs in *Trapote* moved for authorization to serve through diplomatic channels and obtained an order directing the Clerk to mail the papers to the Department of State only after the court had agreed that the third method was unavailable, 729 F. Supp. 3d at 35, 37, and why the judgment creditor in *Casa Express Corp. v. Bolivarian Republic of Venezuela*, No. 21-mc-23103, 2021 U.S. Dist. LEXIS 221512, at *1–2 (S.D. Fla. Nov. 17, 2021), obtained an

order directing diplomatic service on its representation that the third method was unavailable. Those are the two decisions Petitioner cited to the Clerk in support of its statement that the diplomatic channel was "the only method of service effectively available," ECF No. 9-1 at 1, and each is an order granting a motion of the kind Petitioner never made. In *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, 628 F. Supp. 3d 1, 8–9 (D.D.C. 2022), the court itself examined the third method before it entered judgment. Judges of this District treat the question as theirs to decide: in *Gration v. Islamic Republic of Iran*, No. 21-cv-1859 (BAH), 2023 U.S. Dist. LEXIS 141944, at *82–83 n.10 (D.D.C. Aug. 15, 2023), a motion for leave to serve through diplomatic channels "was denied as premature because plaintiffs had not yet attempted to serve defendants through foreign mailing, pursuant to 28 U.S.C. § 1608(a)(3)." Petitioner's status reports told the Court what it intended to do, ECF Nos. 5, 8, and the Court vacated its show-cause order and called for a further report, Minute Order (Dec. 9, 2024); but "[a] request for a court order must be made by motion," Fed. R. Civ. P. 7(b)(1); *see Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 81 (D.C. Cir. 2014) (quoting the Rule), and the Minute Order, which vacated the show-cause order and called for a status report, decided nothing about the method of service.

A plaintiff that certifies to the Clerk its own conclusion that the statute's condition is met has not satisfied the condition; it has assumed it, and the Clerk's dispatch of the papers adds nothing. In *Harrison* the clerk mailed the packet "[a]t respondents' request" and certified both the mailing and the signed receipt, 587 U.S. at 6, and the service was held insufficient. Judges of this District have said the same to plaintiffs who made that certification. In *Karcher v. Islamic Republic of Iran*, 249 F. Supp. 3d 557, 558–59 (D.D.C. 2017), the plaintiffs' letter to the Clerk asserted that Iran's repeated refusals of mail excused them from proceeding first under § 1608(a)(3), and the

court held that the fourth method may be used "only after plaintiffs attempt and fail to effect service within 30 days under section 1608(a)(3)"; service was upheld only when the Clerk's mailing under the third method was later made and signed for. *Id.* at 559–60. In *Estate of Hirshfeld v. Islamic Republic of Iran*, 235 F. Supp. 3d 45, 46–48 (D.D.C. 2017), the plaintiffs requested diplomatic service by letter to the Clerk, the Clerk dispatched the papers, and the Department of State delivered them; the service was held ineffective: "The exclusive manner to demonstrate that service cannot be effected within thirty days under § 1608(a)(3) is to attempt such service." *Id.* at 47 (quoting *Relvas v. Islamic Republic of Iran*, No. 14-cv-1752 (RCL), 2016 U.S. Dist. LEXIS 188404, at *35 (D.D.C. Feb. 18, 2016)). Shown evidence last month that the major carriers were not delivering to Iran, Judge Cooper held that "difficulty and the prospect of failure does not excuse [the plaintiff] from trying." *Doe v. Islamic Republic of Iran*, No. 26-cv-1557 (CRC), 2026 U.S. Dist. LEXIS 211116, at *7 (D.D.C. Sept. 17, 2026). And when a plaintiff served Iran through diplomatic channels in reliance on guidance published on the website of this District Court, and the Clerk dispatched the papers, the court held the reliance "unavailing" and the service invalid. *Azadeh v. Gov't of the Islamic Republic of Iran*, 318 F. Supp. 3d 90, 93–94, 99–100 (D.D.C. 2018). If a plaintiff's certificate sufficed, the condition on which Congress made the diplomatic channel depend would be policed by no one until after the papers had been delivered, and strict compliance with § 1608(a) would mean compliance with whatever the plaintiff chose to certify. Nor can the omission be cured by a determination made now: the statute conditions resort to the fourth method on what is the case when the plaintiff resorts to it, and a plaintiff that has not satisfied the condition has not served; it may serve again in the statutory order. *See Azadeh*, 318 F. Supp. 3d at 100 (the availability of the fourth method "is expressly conditioned upon a plaintiff's failed efforts to serve a foreign sovereign under the other three prior subsections"; a plaintiff "may not opt to serve a

foreign defendant out of order"; the resulting want of personal jurisdiction "is not a waivable or otherwise excusable defect"). Whatever counsel then appearing in the Republic's name may have said in other cases about the methods available against it, ECF No. 9-1 at 1, a litigant's statement in another proceeding neither amends the statute nor decides its application here, and the Republic has taken no such position in this case.

Some judges have been presented with the issue and have determined that it is acceptable under the law to serve the Republic under § 1608(a)(4) after a request under the Convention went unexecuted. *Trapote*, 729 F. Supp. 3d at 37 (granting motion for authorization to serve under § 1608(a)(4); "Plaintiffs argue that this method is inapplicable because Venezuela has formally objected to service by mail. . . . The court agrees.") (collecting cases); *ConocoPhillips*, 628 F. Supp. 3d at 8–9 ("As to the third method, Petitioners assert that it is inapplicable because Venezuela has formally objected to service by mail."); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, No. 17-cv-1457 (TJK), 2018 U.S. Dist. LEXIS 211469, at *12–13, 2018 WL 6605633, at *5 (D.D.C. Dec. 17, 2018); *see also Saint-Gobain*, 23 F.4th at 1042 (noting that "the FSIA permits service through diplomatic channels where other methods have failed"). None of those decisions binds this Court. In *Trapote*, 729 F. Supp. 3d at 35, 37, and *Casa Express*, 2021 U.S. Dist. LEXIS 221512, at *1–2, the plaintiffs moved before the Clerk acted, and the orders were entered before any appearance by the Republic. In *ConocoPhillips* and *Tidewater* the Republic had not appeared, the plaintiffs proceeded on their own determination, and the court examined the question before entering a default judgment — in *Tidewater* after calling for supplemental briefing on the propriety of service, 2018 U.S. Dist. LEXIS 211469, at *8, *12–13 — and neither considered whether the statute permits a plaintiff to make that determination for itself. Judges of this District who have confronted a plaintiff that went to the fourth method without

attempting the third have held the resulting service invalid. *Karcher*, 249 F. Supp. 3d at 559; *Hirshfeld*, 235 F. Supp. 3d at 47–48; *Azadeh*, 318 F. Supp. 3d at 93, 99–100 (collecting cases). *Azadeh* also observed, of the states that objected to service by mail when they acceded to the Hague Convention, that the third method "is categorically unavailable when attempting to serve those countries," *id.* at 99–100 — a statement made in distinguishing Iran, which is not a party to the Convention, which *Tidewater* cited, 2018 U.S. Dist. LEXIS 211469, at *13, and which Judge Contreras has since applied as a holding on the Russian Federation's motion to dismiss. *Watch Tower Bible & Tract Soc'y of Pa. v. Russian Fed'n*, 804 F. Supp. 3d 153, 161–63 (D.D.C. 2025), *recons. granted in part and dismissal vacated*, No. 24-cv-2523 (RC), 2026 U.S. Dist. LEXIS 163758, at *5–6, *11–12 (D.D.C. July 23, 2026); *see also Missouri ex rel. Schmitt v. People's Republic of China*, No. 1:20-cv-99-SNLJ, 2021 U.S. Dist. LEXIS 89733, at *5–9 (E.D. Mo. May 11, 2021) (authorizing diplomatic service by order, on the plaintiff's motion, where the foreign state had objected to postal channels). There the plaintiff had attempted the mailing, the court decided its sufficiency on the sovereign's motion, and the court then authorized diplomatic service by order. *Id.* at *14–15. The formulation on which these decisions rely — that the plaintiff "must attempt service by the first method (or determine that it is unavailable)," *Angellino*, 688 F.3d at 773 — originated in a decision of another judge of this District in which the court itself examined the availability of each method, the third having been attempted and refused, before it accepted service under the fourth. *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008). The Republic is aware of no decision of the Supreme Court or of the Court of Appeals on either side of the question. Petitioner bears the burden of establishing the validity of its service, *Light*, 816 F.2d at 751; *Mann*, 681 F.3d at 372, and on this record it cannot carry it.

### B. The Answer of December 10, 2025 Did Not Waive the Defense, Because It Was Not the Republic's Answer

A defense of insufficient service is waived if the party fails to raise it by motion or in its responsive pleading. Fed. R. Civ. P. 12(h)(1). The Republic has done neither, because it has never pleaded. The answer of December 10, 2025 was filed by counsel whom no organ of the Republic engaged, and whose own pleading stated nineteen times that they acted for CAPA. ECF No. 20 ¶¶ 17–23, 25–29, 34–37, 44–46. "In our adversarial system, a party controls the litigation conducted in its name," *Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608, 619 (D.C. Cir. 2024), and when a party presents "substantial reasons" to question an attorney's authority to act in its name, the district court is obliged to determine the question, and lacks "discretion to refuse" to do so, *id.* at 613–14 & n.4, 617. Such challenges "are not subject to the standard forfeiture rules and may be raised 'at any stage of the case.'" *Id.* at 615 (quoting *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319 (1927)). The extensions and the stay that V&E obtained waived nothing in any event: a motion to stay or for an extension of time is not a "defensive move" under Rule 12, and "signals only that a defendant wishes to postpone the court's disposition of a case." *Mann*, 681 F.3d at 374 (quotation omitted).

Where the client is a foreign state, the existence and scope of an agent's actual authority are determined by that state's own law and instruments. *Themis Capital, LLC v. Democratic Republic of Congo*, 881 F. Supp. 2d 508, 520–21 (S.D.N.Y. 2012); *CapitalKeys, LLC v. Democratic Republic of Congo*, No. 15-cv-2079 (KBJ), slip op. at 23 (D.D.C. June 3, 2021), ECF No. 76, *aff'd*, No. 21-7070, 2022 U.S. App. LEXIS 20367, at *5–7 (D.C. Cir. July 22, 2022) (per curiam); *TJGEM LLC v. Republic of Ghana*, 26 F. Supp. 3d 1, 9–10 (D.D.C. 2013), *aff'd*, No. 14-7036, 2015 U.S. App. LEXIS 10396 (D.C. Cir. June 9, 2015); *cf. Themis*, 881 F. Supp. 2d at 526 (applying apparent-authority principles to a State's commercial borrowing). Under the law of the

Republic, the Procuraduría General de la República holds the exclusive competence to represent the Republic in judicial proceedings, Const. art. 247; LOPGR art. 2; Rodríguez Law Decl. ¶¶ 4–6, and process against the Republic is served on the Procurador General, LOPGR arts. 93, 108. The Procuraduría never engaged V&E or any of the four V&E attorneys named in the Answer's signature blocks, two of whom had appeared, ECF Nos. 13, 17; it issued no power of attorney in their favor; it gave them no instruction; it had no communication with them concerning this action; and the Answer was never submitted to it. Rodríguez Decl. ¶¶ 10–11. The Republic has never recognized any authority in the 2015 National Assembly or in CAPA to act for it. Ex. A ¶ 50; *see supra* note 4. Nothing in the record reflects any grant of authority, by any organ of the Republic, to the counsel who filed the Answer — to appear, to admit personal jurisdiction, or to forgo any defense.

Petitioner said as much itself, before it dealt with CAPA's counsel. In February 2025 it told the Clerk that "there is no currently recognized Venezuelan government and thus no recognized foreign minister"; that the 2015 National Assembly had been recognized as "the only legitimate branch of the Government of Venezuela"; and that it was "aware of no other entity within the territory of Venezuela that is recognized by the United States either as Venezuela's Central Authority or as a representative of the Venezuelan government appointed to receive service of process on the recognized government's behalf." ECF No. 9-1 at 2–3. Ten months later it accepted the signature of counsel whose pleading described CAPA as appointed by "the democratically-elected government of Venezuela that is recognized by the United States," ECF No. 20 ¶ 17, and in June 2026 it told this Court that the Assembly "was the recognized government when the Partial Settlement Agreement was executed." ECF No. 24 at 2. The Executive Branch's own statement of its position in that period, the August 2025 Letter, recognized the 2015 National Assembly "as the

government of Venezuela"; it identified no person authorized to act for the Republic in the courts of the United States, and who held that authority for the Republic's organs was then being litigated in *Stansell*. *See infra* Part I.C.

The consequence is narrow. Under *Guaranty Trust*, the rights of a foreign state "are vested in the state rather than in any particular government which may purport to represent it," and suit on its behalf "may be maintained in our courts only by that government which has been recognized by the political department of our own government as the authorized government of the foreign state." 304 U.S. at 137. The Answer of December 10, 2025 accordingly waived nothing on the Republic's behalf, and the Republic raises the defense by motion before pleading, as Rule 12 contemplates.

### C. The Action Should Be Dismissed

Where service is insufficient the court may dismiss the action or quash the service. The Court of Appeals has affirmed dismissal where the plaintiff, having chosen a method of service that did not satisfy the governing rule, was "subjected to the risk that his suit will be dismissed or that service will be quashed . . . and properly so," *Light*, 816 F.2d at 751, observing that the plaintiff "must face the consequences of the choice she made," *id.*, and that the possibility that the limitations period had run in the meantime "does not affect our decision," *id.* at 751 n.15. It has in another case reversed the dismissal of an action against a foreign state and directed that the plaintiff be permitted to perfect service, applying the rule that dismissal "for failure to prosecute due to a delay in service is appropriate only when there is no reasonable probability that service can be obtained or there is a lengthy period of inactivity," and weighing the plaintiff's good faith, the near-compliance of her last attempt, the running of limitations, and the absence of prejudice to the defendant — in a case in which "the district court itself was responsible for a substantial portion

of the mistakes in service." *Barot*, 785 F.3d at 29 (quoting *Angellino*, 688 F.3d at 775) (alterations and internal quotation marks omitted); *id.* at 27, 29–30. The choice is the Court's, and dismissal is the appropriate disposition here. Petitioner, represented by counsel, recited the statutory hierarchy to the Court and then departed from it on its own authority; no act of the Court or of the Clerk led it to do so; and it did so against a sovereign whose competent organ, as a result, was not before the Court until after an answer had been filed and an instrument signed in its name. Because the Republic has not been served, the Court lacks personal jurisdiction over it, 28 U.S.C. § 1330(b); *Foremost-McKesson*, 905 F.2d at 442, and no judgment may be entered against it, on the Instrument or on the Award, until it is; the Republic accordingly asks that Petitioner's announced cross-motion for entry of judgment not be entertained until the Republic has been served and has responded. Should the Court conclude that quashing service is the appropriate remedy, the Republic asks that Petitioner be directed to serve it in the manner and order § 1608(a) prescribes. The Republic will respond within the time 28 U.S.C. § 1608(d) allows, and the pleading attached as Exhibit A is the answer it will file; nothing in this motion is sought for delay.

Service on the Procurador General is the means by which the statute, and the law of the Republic, ensure that the organ competent to act for the Republic learns of an action against it, and that the question who may act for it reaches the court before anyone acts in its name. What that question produces when it does reach a court is a matter of record. In *Stansell v. Revolutionary Armed Forces of Colombia*, No. 16-mc-405 (LGS) (SN) (S.D.N.Y.), judgment creditors sought to execute on assets of organs and instrumentalities of the Republic, among them the Ministerio del Poder Popular de Economía, Finanzas y Comercio Exterior, and two sets of counsel appeared for subsidiaries of Petróleos de Venezuela, S.A. among them — one on the authority of an ad hoc board of that company appointed by the authorities the 2015 National Assembly had purported to

install, the other on authorizations from the entities themselves — each disputing the other's authority to act. Notice of Appearance at 1–3, *Stansell*, ECF No. 361 (Oct. 1, 2021); Letter at 1–3, *Stansell*, ECF No. 378 (Oct. 8, 2021); *see* Joint Letter at 2–3, *Stansell*, ECF No. 625 (Apr. 3, 2026) (both teams appearing for the Ministry). On October 17, 2025 — a month after the counsel engaged by CAPA appeared in the Republic's name here, ECF No. 13, and eight weeks before they filed the Answer and signed the Instrument — that court identified "which counsel . . . is authorized to represent" the PDVSA and BANDES subsidiaries as "the 'authority-to-represent' issue," stated that it "intends to resolve the authority-to-represent issue as expeditiously as possible," and stayed the four related enforcement proceedings, except as to collection proceedings not involving the accounts of Venezuelan state entities, "pending resolution of the authority-to-represent issue." Order at 2–3, *Stansell*, ECF No. 600. It then invited the views of the United States, Statement of Interest at 1 (quoting Order, *Stansell*, ECF No. 612 (Jan. 12, 2026)); received them, *id.* at 1–2; extended the stay, on the joint request of both sets of counsel — who "acknowledge[d] President Rodríguez's authority as the sole Head of State recognized by the United States" — so that the entities could designate "permanent counsel," Joint Letter at 1, *Stansell*, ECF No. 625; Mem. Endorsement at 2, *Stansell*, ECF No. 626 (Apr. 6, 2026); and lifted it on May 15, 2026, after counsel had reported their designation as permanent counsel "under the United States-recognized administration of President Delcy Rodríguez" and the competing firm had moved, unopposed, to withdraw — resolving what the court called "a threshold issue," as the court recited, "without any further litigation." Letter at 1–2, *Stansell*, ECF No. 629 (May 8, 2026); Order at 2–3, *Stansell*, ECF No. 632. Nothing was compromised in those entities' name while the question was open.[7] Here the

[7] The question has been handled differently elsewhere. In *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 20-mc-40 (LJV), 2021 U.S. Dist. LEXIS 90029 (W.D.N.Y. May 11, 2021), where "[t]wo sets of lawyers claim[ed] to represent a single party," *id.* at *1, the

question never reached the Court, because the papers were delivered to a person the Republic does not recognize as authorized to receive them and the only counsel who appeared were those engaged by CAPA. Petitioner answered the question for itself, twice: to the Clerk in February 2025, when it determined that there was "no currently recognized Venezuelan government," ECF No. 9-1 at 3, and in December 2025, when it accepted Mr. Cardozo's signature for the Republic. Had the Republic been served on the organ that the statute and its own law designate, what it could have said in this action, and through whom, would have been questions for this Court — as they were for the court in *Stansell* — rather than questions Petitioner answered for itself and then built the Instrument upon.

## II. IN THE ALTERNATIVE, THE REPUBLIC HAS NEVER PLEADED, AND EXHIBIT A SHOULD BE RECEIVED AS ITS ANSWER

Should the Court hold that service was sufficient, the Republic has still never responded to the Petition. For the reasons stated in Part I.B, the Answer of December 10, 2025 was not the Republic's pleading, and the Instrument was not the Republic's agreement. From January 2019 until March 2026, the recognition decisions of the Executive Branch then in force limited what the Republic's government, and the Procuraduría through which it litigates, could do in the courts of the United States, *Guar. Tr.*, 304 U.S. at 137; *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 319–20 (1978), and whether, and through whom, the Republic's organs could be heard was itself in

court held that "who is authorized to represent" Petróleos de Venezuela, S.A. and its subsidiaries turned on "who the United States has recognized as Venezuela's government," *id.* at *16; treated the ad hoc board appointed by the authorities the 2015 National Assembly had purported to install as "the only board authorized to appoint counsel," *id.* at *14; and struck the appearances of the counsel whom PDVSA's own general counsel had retained, *id.* at *7, *21–22. The competing counsel in *Stansell* invoked that ruling in asking that court to do the same. Letter at 1–3, *Stansell*, ECF No. 378. The court in *Stansell* did not; it held the question, briefed since January 2022, until the entities themselves resolved it. Order at 2–3, *Stansell*, ECF No. 600. Either course places the question before the court. Neither occurred here.

litigation. *See supra* Part I.C. The Executive's recognition decisions bind the courts, *Guar. Tr.*, 304 U.S. at 138; *see Venezuela US SRL*, 178 F.4th at 683, which remain free to draw their legal consequences for pending litigation, *Guar. Tr.*, 304 U.S. at 137–38, and this Circuit has long insisted that a foreign state's defenses be heard where its earlier silence was the product of circumstances "in considerable measure out of [its] control." *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835, 838–41 (D.C. Cir. 2006) (state "plainly hampered" by civil war); *see Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1552 (D.C. Cir. 1987).

The Republic therefore asks the Court to treat this proceeding, as to the Republic, as beginning on the day it appeared through authorized counsel, and to receive the pleading attached as Exhibit A as the Republic's answer to the Petition. That pleading answers the Petition on the merits, from the Procuraduría's own knowledge of the arbitration it conducted; withdraws the single defense and the nineteen recitals of the December 2025 answer, because they do not state the Republic's position; pleads the Republic's defenses; and states that nothing in it ratifies, adopts, or confirms the Instrument or any act of prior counsel. Ex. A, Prelim. Stmts. ¶¶ C–D; *id.* ¶ 57. On that footing the Instrument does not bind the Republic for a single reason that requires no further inquiry: it was signed by a person whom no organ of the Republic ever authorized to appear for it, let alone to compromise its defenses and consent to judgment against it. *See infra* Part III.E.1.

## III. ALTERNATIVELY, LEAVE TO AMEND SHOULD BE GRANTED

### A. The Amendment Is Necessary So That the Republic's Pleading States the Republic's Position

If the Court were to treat the answer of December 10, 2025 as the Republic's pleading, the Republic seeks leave under Rule 15(a)(2) to file Exhibit A as its Amended Answer. Pleading is meant "to facilitate a proper decision on the merits," *Foman*, 371 U.S. at 181–82 (quoting *Conley*

*v. Gibson*, 355 U.S. 41, 48 (1957)), and Rule 15 "provides a mechanism whereby a party who harmlessly failed to plead an affirmative defense may find satisfaction," *Harris*, 126 F.3d at 343. The Republic's operative pleading does not state the Republic's position at all. It is, on its face, CAPA's answer; it says so nineteen times, and it pleads a single defense premised on the proposition that the lawyers who defended the arbitration on the Republic's behalf were not the Republic's lawyers. ECF No. 20 ¶¶ 17–23, 25–29, 34–37, 44–46 & at 22. The Republic defended the arbitration through the Procuraduría, from the Notice of Arbitration to the Swiss Federal Tribunal, and cannot maintain a pleading that says otherwise. The counsel who filed it had no communication with the Procuraduría before they did so, Rodríguez Decl. ¶ 10; Ex. A ¶ 54, and the Answer's nineteen disclaimers of knowledge are what that absence produced: the organ that had defended the arbitration for eight years was never asked. The proposed pleading admits what the Award and the Swiss judgments say rather than disclaiming knowledge of them. Ex. A ¶¶ 17–37, 44–46.

The amendment is also necessary because the Answer's authors purported, two days after filing it, to compromise the very defenses the Answer pleaded and to consent to a judgment the Republic has never authorized. Petitioner agrees that "the Republic is entitled to select its own lawyers in this proceeding," ECF No. 24 at 2, and — as Judge Bates observed of the counsel who appeared for the Republic in *Air Canada* — "there is no question here whether Venezuela's current counsel is authorized to represent it in this Court." *Air Canada Inc. v. Bolivarian Republic of Venezuela*, No. 24-cv-2249 (JDB), 2026 U.S. Dist. LEXIS 183930, at *13 n.4 (D.D.C. Aug. 14, 2026), *appeal filed* (D.C. Cir. Sept. 15, 2026). The Republic is entitled to a pleading that states its position, and the proposed pleading does that and nothing more. It admits venue and the facts of the arbitration, and contests the Court's jurisdiction under 28 U.S.C. § 1605(a)(6) and (a)(1) on the

grounds stated in Part III.E.4; it pleads that service was not made in accordance with § 1608(a), for the reasons stated in Part I; it pleads two defenses under Article V of the Convention and invokes no other ground stated in Article V, *see infra* Part III.E.4; and it states expressly that nothing in it ratifies, adopts, or confirms the Instrument or any act of prior counsel. Ex. A, Part I ¶¶ 3–8, 47; *id.*, Prelim. Stmts. ¶¶ C–D; *id.* ¶ 58.

**B. There Has Been No Undue Delay**

The Court's September 22 Order refers to "the delays in this case that is now more than two years old, and the prior representations that this case would be resolved without court intervention." Both are the product of the Instrument the amendment addresses, not of the Republic's conduct since it appeared through counsel of its own choosing. The two extensions were sought by V&E, the second while it was negotiating the Instrument with Petitioner. ECF Nos. 14, 18. The Answer was filed on the last day allowed, and the stay was jointly requested the same day and granted two days later, "until further order of this Court." Minute Order (Dec. 12, 2025). From that date until September 22, 2026, nothing was due from the Republic except the notice required by the July 3, 2026 Minute Order, which undersigned counsel's appearance answered. ECF Nos. 21, 22, 23, 25, 27. When the appellate decision on which the Instrument depended issued, V&E was, by Petitioner's account, "unable to obtain instructions from the Republic." ECF No. 24 at 2. The Procuraduría then engaged undersigned counsel, who appeared on July 22, 2026, and in the first joint filing thereafter the Republic stated its position. ECF Nos. 25, 27 at 4. The Court set October 5, 2026; the Republic has met that date and seeks no extension of any deadline the Court has set.

The "prior representations that this case would be resolved without court intervention" were made by V&E and Gibson Dunn in the joint stay motion and the status reports that followed. ECF

Nos. 19, 21, 22, 23. The Republic cannot fairly be charged with dilatory conduct for declining to perform an instrument it never authorized, when the first thing it did upon appearing through authorized counsel was to say so and to seek leave to plead it. *See FG Hemisphere*, 447 F.3d at 838–41; *Practical Concepts*, 811 F.2d at 1552. "[I]n most cases delay alone is not a sufficient reason for denying leave," *Caribbean Broad.*, 148 F.3d at 1084 (quotation omitted), and the cases in which delay has justified denial involve a motion on the eve of trial, after discovery had closed, where prejudice was found or likely. *Atchinson*, 73 F.3d at 426–27. Here there is no scheduling order, no discovery, no trial date, and no merits briefing; the case has been stayed for nine of the fourteen months since the return of service was filed; and the Republic moved at the first opportunity after appearing through counsel it had actually authorized. ECF Nos. 25, 27 at 4; *see Nwachukwu*, 222 F.R.D. at 211–12.

### C. The Republic Acts in Good Faith, Not with a Dilatory Motive

The amendment narrows this case. It withdraws the only defense pleaded in the Answer; it replaces nineteen disclaimers of knowledge with admissions of what the Award and the Swiss judgments say; and, apart from the two defenses it pleads, it invokes no ground stated in Article V of the Convention. Ex. A ¶¶ 17–37, 44–47; *id.*, Prelim. Stmt. ¶ C. The matters the amendment adds are bona fide disputes that the Court will have to resolve in any event: to prevail on its announced cross-motion, ECF No. 27 at 3, Petitioner must establish that the Instrument binds the Republic, *see infra* Part III.E.1; and any judgment the Court enters must fix the amounts and the interest to be awarded, *see infra* Part III.E.2. The Republic's pleading these matters in its own answer does not create the disputes; it places them before the Court in the orderly way the Rules contemplate, with the facts pleaded, the foreign law noticed under Rule 44.1, and the record made through declarations.

Nor is this the case of a "strategic litigant" who withheld a defense and now seeks to deploy it. *Cf. Harris*, 126 F.3d at 345. The Republic's organs made no choice to omit these matters from the Answer. The Instrument had not been executed when the Answer was filed, *see* ECF No. 21 at 2 n.1, and the events that give rise to the other supplemental matters — the affirmance in *Venezuela US SRL*, prior counsel's inability to obtain instructions, and Petitioner's demand that the stipulation be executed — all occurred in 2026. Ex. A ¶¶ 51–52, 59–61. As for the Answer itself, whether the Petition had reached the Republic was a fact within the knowledge of the Procuraduría, with which none of the counsel then appearing communicated, Rodríguez Decl. ¶¶ 9–10; and the Procuraduría could not plead anything in this Court until it had counsel here. That is the condition the amendment cures.

**D. Petitioner Will Suffer No Undue Prejudice**

Prejudice, in the Rule 15 sense, means prejudice from the amendment itself — "a denial of the opportunity to present facts or evidence which [] would have [been] offered had the amendment[] been timely." *Nwachukwu*, 222 F.R.D. at 212 (quoting *Dove v. WMATA*, 221 F.R.D. 246, 248 (D.D.C. 2004)). None of that is present. Whether or not the amendment is allowed, Petitioner will have to prove the Instrument's formation and the signatory's authority in either event, because that burden rests on the party seeking enforcement. *See Makins v. District of Columbia*, 861 A.2d 590, 594 (D.C. 2004) (en banc); *A-J Marine, Inc. v. Corfu Contractors, Inc.*, 810 F. Supp. 2d 168, 180 (D.D.C. 2011). A party that negotiated a compromise with counsel whose pleading announced, nineteen times, that they acted for a body other than the Republic's constitutional representative, and that disclaimed knowledge of the Republic's own arbitration, was on notice that the question of authority would arise, Rodríguez Decl. ¶¶ 8, 10, and Petitioner had itself told the Clerk, ten months earlier, that "there is no currently recognized Venezuelan

government." ECF No. 9-1 at 3. The loss of the bargain Petitioner says it struck with prior counsel is not prejudice from the amendment; it is the merits of the dispute the amendment frames. *See A-J Marine*, 810 F. Supp. 2d at 181 (third party on notice of limits on an agent's authority cannot invoke apparent authority); *Makins v. District of Columbia*, 277 F.3d 544, 550 (D.C. Cir. 2002), *certified question answered*, 861 A.2d 590 (D.C. 2004) (en banc), *and vacated and remanded*, 389 F.3d 1303 (D.C. Cir. 2004) (per curiam) (third parties can protect themselves by "obtaining clarification of the lawyer's authority" from the client (quoting Restatement (Third) of the Law Governing Lawyers § 27 cmt. d (2000))). Petitioner sought no such clarification from any organ of the Republic; it took instead a warranty from the agent itself. Ex. B, Annex 1, ¶ 8.

### E. The Amendment Is Not Futile

An amendment is futile if the pleading, as amended, would not survive a motion directed to it, *James Madison*, 82 F.3d at 1099, and the party opposing amendment bears the burden of showing futility, *see Morgan*, 262 F.R.D. at 9. The bulk of the amendment — the withdrawal of the Article V(2)(b) defense and of the CAPA recitals, and the substitution of admissions and denials for the disclaimers of knowledge — cannot be futile; it removes matter and admits facts.

#### ***1. The Republic Is Not Bound by the December 12, 2025 Instrument***

The proposed pleading alleges that the Instrument was signed by an unauthorized lawyer of the firm that had appeared at CAPA's direction; that the Procuraduría never engaged that counsel or authorized any compromise of the Republic's defenses, waiver of its immunities or right of appeal, or consent to judgment; that the law of the Republic requires express authority for any such act; that the Republic has never recognized any authority in the 2015 National Assembly or in CAPA to act for it, and that the Republic's highest court declared null and without legal effect the instrument of which CAPA's charter purported to be a reform; that the Republic has not ratified

and does not ratify the Instrument; and that the Instrument therefore does not bind the Republic. Ex. A ¶¶ 49–58.[8] The matters addressed in Part I.B are not repeated here; three further points bear on futility.

*First*, an attorney's authority to appear does not carry with it authority to compromise the client's claim. An attorney at law, "merely as such, has, strictly speaking, no right to make a compromise," and a compromise "being unauthorized and being therefore in itself void, ought not to bind the injured party." *Holker v. Parker*, 11 U.S. (7 Cranch) 436, 452–53 (1813). The Supreme Court applied that rule to the United States itself: a district attorney with no authority to compromise could not bind the government by consenting to judgments, because "the utter want of power of an attorney, by virtue of his general retainer only, to compromise his client's claim, cannot . . . be successfully disputed." *United States v. Beebe*, 180 U.S. 343, 351–52, 355 (1901). The law of the District of Columbia is to the same effect: "regardless of the good faith of the attorney, absent specific authority, an attorney cannot accept a settlement offer on behalf of a client." *Bronson v. Borst*, 404 A.2d 960, 963 (D.C. 1979) (quoted in *Makins*, 861 A.2d at 594–95); *see Makins*, 861 A.2d at 592, 594–95, 597 ("[r]etention of the attorney by itself is insufficient to bestow actual or apparent authority"); *Autera v. Robinson*, 419 F.2d 1197, 1201 n.18 (D.C. Cir. 1969); D.C. Rule of Prof'l Conduct 1.2(a). The scope of an attorney's actual authority "usually depends on the contract between the lawyer and client and any instructions from the client." *Doraleh*, 109 F.4th at 617.

[8] The Republic's reservation extends to the validity, under the Constitution and laws of the Republic, of the instruments under which CAPA purported to act. *See supra* note 4. The argument that follows does not depend on those instruments: it rests on the law of the Republic governing the authority of those who litigate in its name, and on the absence of any authorization from the organ that law makes competent to give it.

*Second*, the law of the Republic, which governs the authority of those who act for it, *see supra* Part I.B, withholds the authority to compromise from anyone who has not received it expressly. An attorney-in-fact may not consent to a claim, withdraw, settle, or compromise it, submit it to arbitration, or dispose of the right in litigation without express authority, Código de Procedimiento Civil art. 154; Código Civil art. 1.688; the Republic's procedural prerogatives are non-waivable, LOPGR art. 77; no attorney representing the Republic in litigation may do any of those things on its behalf without the express authorization of the Procurador General, given upon the prior written instruction of the highest authority of the organ concerned, *id.* art. 82; and the Republic's attorneys must pursue every available remedy absent a contrary written instruction of that authority, *id.* art. 85. Rodríguez Law Decl. ¶¶ 9–13. The Procuraduría conferred none of these. Rodríguez Decl. ¶¶ 10, 12–13. Whether the signatory of the Instrument held the express authority that the law of the Republic requires is a question of fact and of foreign law, which by itself defeats a claim of futility.

*Third*, the burden of proving the Instrument's formation, including the signatory's authority, rests on Petitioner, *see supra* Part III.D, and a genuine dispute about formation cannot be resolved summarily; such disputes call for an evidentiary hearing. *Autera*, 419 F.2d at 1200, 1202–03 (reversing enforcement of a settlement whose authorization the clients disputed by affidavit); *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001) (where "there is a genuine dispute about whether the parties have entered into a binding settlement, the district court must hold an evidentiary hearing that includes the opportunity for cross-examination"). The proposed pleading puts formation genuinely in dispute, on sworn evidence from the organ whose authority is at issue, and states expressly that nothing in it, in the Republic's appearance, or in its participation in the briefing schedule ratifies, adopts, or confirms the Instrument. Ex. A ¶ 57; *see id.*, Prelim. Stmt. ¶

D. By parity of reasoning with *Doraleh*, the Court must satisfy itself that counsel had authority to bind the Republic before entering any judgment on the Instrument; a pleading that places that question, and the evidence bearing on it, before the Court is not futile. Nor could the Instrument's provision that the Republic's "defenses under the New York Convention shall be deemed waived," Ex. B, Annex 1, ¶ 2, dispose of the Fifth Defense in any event: the public-policy ground of Article V(2)(b) "implicate[s] the integrity of the enforcing court," and "forfeiture cannot divest the court of its duty to resolve the public policy question any more than waiver can." *Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 844 F.3d 281, 288–89 (D.C. Cir. 2016).[9]

#### *2. The Amounts Petitioner Seeks Are Not Liquidated, and Post-Judgment Interest Is Governed by § 1961*

The proposed pleading denies that Petitioner is entitled to judgment in the amounts and form requested in paragraph 48 of the Petition and in the proposed judgment attached to the Instrument, and alleges that the Award identifies no rate series, fixing date, reset convention, or day count for "the interest yield rate on ten-year U.S. bonds"; that the Award's interest runs in a single course "until full payment" and does not purport to fix post-judgment interest; and that any

---

[9] The Instrument may also be void under the law of the United States, a point the Republic notes without relying on it. The law of the United States in force when the Instrument was executed prohibited the entry into a settlement agreement "purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201" unless "authorized pursuant to a specific license," 31 C.F.R. § 591.407; *see id.* § 591.506(c) (2025), and provided that a transfer in violation of that prohibition "is null and void," *id.* § 591.202(a). Paragraph 4 of the Instrument, by which the Republic's protection under 28 U.S.C. § 1610(c) against execution on its property was purportedly waived, at a minimum falls within that description. Ex. B, Annex 1, ¶ 4. A court "has a duty to determine whether a contract violates federal law before enforcing it." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83–84 (1982). The Republic's position that the Instrument does not bind it rests on the grounds stated in the text, which do not depend on the law of the United States; the Republic refers to these provisions solely as the law of the forum binding on those who executed the Instrument there, without any admission of the validity of the unilateral measures imposed on it, and does not contend that a license is required for the Court to adjudicate the Petition.

sum entered must be computed on a stated methodology as of a date certain, with the Republic heard on the computation. Ex. A ¶¶ 34–36, 48, 62–66. It also pleads the Republic's construction of the Award's interest provisions: that the Award, which states no numeric rate, fixes interest at the yield on ten-year Treasury securities prevailing on the date from which each course of interest runs — September 3, 2014 for the compensation and August 9, 2023 for the costs — held constant and compounded annually, because the Tribunal chose the ten-year yield on the reasoning that "compensation for expropriation, due since 2014, requires an interest rate that remunerates a long-term debt," Award ¶¶ 803, 806; and, in the alternative, that the rate resets annually and never applies a later yield to an earlier period. Ex. A ¶¶ 63–65. The difference is not academic: the ten-year yield was 2.41 percent on September 3, 2014 and 5.18 percent on September 24, 2026, and on the Republic's construction, interest on the compensation through September 26, 2026 is approximately $34.6 million, while the same course computed at the current yield throughout would be approximately $87.4 million.

None of this is futile, and much of it is settled law in this District. Once an award is confirmed, "the award merges into the judgment and the federal rate for post-judgment interest presumptively applies"; the terms of § 1961 are "mandatory"; and award language running interest "until payment" "does not clearly portray the intent of the parties to replace the federal interest rate." *Tenaris S.A. v. Bolivarian Republic of Venezuela*, No. 18-cv-1371 (CRC), 2020 U.S. Dist. LEXIS 106397, at *5–7 (D.D.C. June 17, 2020) (quotations omitted). Judges of this District have entered judgment on awards against the Republic in exactly that form. Order, *ConocoPhillips*, 2022 U.S. Dist. LEXIS 149512, at *19–20 ("[p]ost-judgment interest pursuant to 28 U.S.C. § 1961 on all the above amounts from the date of this Judgment until full payment"); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100 (D.D.C. 2017), and Order at 2, No. 16-

cv-661 (RC) (D.D.C. Mar. 25, 2017), ECF No. 31. Judge Cobb did the same in *Venezuela US SRL* itself: the amended final judgment fixed every component of the award as of a date certain and provided that "[p]ost-judgment interest shall be determined in accordance with" § 1961. Amended Order and Final Judgment at 1–2, *Venezuela US SRL v. Bolivarian Republic of Venezuela*, No. 22-cv-3822 (JMC) (D.D.C. Aug. 14, 2025), ECF No. 50. The proposed judgment attached to the Instrument, which would run the Award's rate "until full payment," is contrary to that practice, and the Award's rate itself requires the Court to fix a series, a fixing date, and a convention before any sum can be entered. Whatever the disposition of the Instrument, the Republic is entitled to be heard on these matters, and the proposed pleading states them in the alternative as well, Fed. R. Civ. P. 8(d)(2)–(3): paragraphs 2 and 3 of the Instrument speak of "defenses under the New York Convention" and "defenses to recognition of the Award," Ex. B, Annex 1, ¶¶ 2–3, and a dispute over the construction of the Award's interest provisions and the application of § 1961 is neither; and the form of judgment attached to the Instrument was never executed by or for the Republic. Ex. A, Part III (Second Defense). The alternative is pleaded expressly without prejudice to the First Defense and ratifies nothing.

### ***3. The Reservation of Immunity from Attachment and Execution***

The proposed pleading reserves the Republic's immunity from attachment and execution under 28 U.S.C. §§ 1609–1611, including the protection of § 1610(c), and denies that any waiver of that immunity has been made by a person with authority to make it. Ex. A ¶ 67. A reservation of this kind cannot be futile. Execution immunity is not adjudicated at the confirmation stage; a judgment creditor must later overcome the "default presumption" that a foreign state's property is immune, *Bainbridge Fund Ltd. v. Republic of Argentina*, 102 F.4th 464, 468 (D.C. Cir. 2024) (quotation omitted), and a waiver of immunity from attachment and execution, like any waiver of

sovereign immunity, is construed narrowly, *Bainbridge*, 102 F.4th at 471; *see World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002) (waivers of immunity "narrowly construed 'in favor of the sovereign'" and not enlarged "'beyond what the language requires'" (quoting *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986))). Judges of this District have held that only an actually authorized agent may waive a State's immunity from jurisdiction, *SACE S.p.A. v. Republic of Paraguay*, 243 F. Supp. 3d 21, 36, 38–39 (D.D.C. 2017); *CapitalKeys*, slip op. at 21; *see also Themis*, 881 F. Supp. 2d at 523–24 (surveying the authorities) — reasoning that applies with at least equal force to the immunity of the State's property from execution. The reservation is also stated in the alternative: paragraph 4 of the Instrument refers only to "any statutory right under 28 U.S.C. § 1610(c)" and a six-month period, identifies no property, and does not refer to §§ 1609, 1610(a), or 1611, Ex. B, Annex 1, ¶ 4; Ex. A, Part III (Third Defense); what effect it could have if the Instrument bound the Republic is a question for the execution stage, and pleading the point in the alternative ratifies nothing.

### *4. The Fourth and Fifth Defenses Do Not Make the Amendment Futile*

The proposed pleading withdraws the operative Answer's Article V(2)(b) defense and states that the Republic does not invoke Article V(1)(b), V(1)(d), V(1)(e), or V(2)(a) of the Convention. Ex. A, Prelim. Stmt. ¶ C. It pleads two defenses under Article V. The Fourth Defense, under Articles V(1)(a) and V(1)(c), is that Petitioner — which received the shares of Clorox Venezuela from its parent company as a contribution in kind — made no investment within the meaning of Article I(2) of the Treaty, and so was not an investor entitled to accept the Republic's offer to arbitrate; the Tribunal so held in its award of May 20, 2019, before the Swiss Federal Tribunal set that award aside. Award ¶¶ 204–208, 234; Judgment 4A_306/2019, Faits § A (the shares contributed to Petitioner at its incorporation as an "apport en nature"); Pet. Ex. 4 (ECF No.

1-4) art. I(2). The Fifth Defense, under Article V(2)(b), rests on Petitioner's tender, at eleven o'clock on the night before the last day of the hearing, of a document whose authenticity, after a forensic examination, "cannot be established," which the Tribunal excluded and for which it ordered Petitioner to bear the costs of the examination. Award ¶¶ 120–122, 195; *see supra* note 3.

The pleading also contests the Court's jurisdiction. "[T]he existence of an arbitration agreement" is a "jurisdictional fact[] that must be established" before § 1605(a)(6) lifts a foreign state's immunity. *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 27 F.4th 771, 776 (D.C. Cir. 2022) (quoting *LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 877 (D.C. Cir. 2021)); *see NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100–04 (D.C. Cir. 2024). The Tribunal's own determination of that fact was that no agreement with Petitioner existed, because Petitioner held no investment protected by the Treaty. Award ¶ 205. The contrary determination was made by the Swiss Federal Tribunal, which annulled that award and remanded only the objections it had not itself resolved; the Tribunal thereafter treated the question as settled by the judgment. *Id.* ¶¶ 207–208, 222, 234. A foreign court's judgment is not an arbitral award, and neither the Convention nor Chapter 2 of the Federal Arbitration Act provides for its recognition, *Comm'ns Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 327, 329–30 (D.C. Cir. 2014) (a foreign judgment, even one confirming an award, is not itself subject to recognition under the Convention or Chapter 2); the deference the Court of Appeals gives to arbitrators on questions of arbitrability runs to the arbitrators' determination, *Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 207–08 (D.C. Cir. 2015); *Stileks*, 985 F.3d at 877–79, and here that determination was that no agreement existed. The pleading likewise denies that the Republic's accession to the Convention waived its immunity under § 1605(a)(1), a construction of the waiver exception that the Court of Appeals has "not formally adopted," *Process & Indus. Devs.*, 27 F.4th

at 774, and whose premise is an agreement by the State to arbitrate with the claimant, *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 578–79 (2d Cir. 1993) — the fact the pleading denies. Ex. A, Part I ¶¶ 3–5; *id.*, Part III (Fourth Defense & n.1). Because the Republic's assertion of immunity is colorable, the Court "must resolve" it "before the foreign sovereign may be required to address the merits at all." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 586 (D.C. Cir. 2020).

The Court of Appeals has treated the question whether a claimant held a protected investment as one of arbitrability for the arbitrators, *Chevron*, 795 F.3d at 207–08; *Stileks*, 985 F.3d at 877–79, has characterized the question which investors a treaty covers as one of the treaty's scope rather than of the agreement's existence, *Stileks*, 985 F.3d at 878; *NextEra*, 112 F.4th at 1101–04, and has held § 1605(a)(6) satisfied by an award that purports to be made under an agreement to arbitrate, *NextEra*, 112 F.4th at 1101–04. Whether that deference is owed where the arbitrators' own determination was that no agreement existed, and the contrary determination was made by the court of the seat, has not been decided. The pleading also preserves, for review by a higher court, the position that an award rendered without jurisdiction is not an award "made pursuant to" an agreement to arbitrate and that the award of May 20, 2019 was correct, *see BG Group PLC v. Republic of Argentina*, 572 U.S. 25, 50–54 (2014) (Roberts, C.J., dissenting); *cf. Chevron*, 795 F.3d at 205–06 (following the *BG Group* majority). This Court and the panels of the Court of Appeals are bound by circuit precedent until the en banc court or the Supreme Court revisits it, *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997), and the Republic raises the position here to preserve it. The Court of Appeals construes Article V(2)(b) narrowly, and no decision of the Supreme Court or of the Court of Appeals addresses the tender, at the close of a

hearing and on a question the tendering party itself described as important to the case, of a document whose authenticity that party could not establish. Ex. A, Part III (Fifth Defense & n.2).

Leave may in any event be granted in part, Fed. R. Civ. P. 15(a)(2), and the Court may receive the pleading and address these defenses on Petitioner's cross-motion. Neither course imposes on Petitioner a burden it would not otherwise bear: the party resisting confirmation "bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies," *Crystallex*, 244 F. Supp. 3d at 110 (quotation omitted), and the Republic accepts that burden.

#### *5. The Sixth Defense Restates the Grounds of This Motion*

The Sixth Defense pleads that service was not made in accordance with 28 U.S.C. § 1608(a), for the reasons stated in Part I, and asks in the alternative that the purported service of July 18, 2025 be quashed and that Petitioner be directed to serve the Republic in accordance with that section. Ex. A, Part III (Sixth Defense) & Prayer ¶ (b). If the Court treats Exhibit A as the Republic's first responsive pleading, the defense is timely raised in it, Fed. R. Civ. P. 12(b)(5), 12(h)(1)(B); if it treats Exhibit A as an amendment, the defense was omitted from the operative Answer, and whether that omission binds the Republic is the question of authority that governs the Instrument. *See supra* Part I.B.

### F. Alternatively, the Added Matter Is Properly Pleaded Under Rule 15(d)

Every event on which the added matter rests occurred after December 10, 2025: the execution of the Instrument two days later; the change in recognition in March 2026; the "Affirmance" of June 12, 2026, as the Instrument defined it; prior counsel's inability to obtain instructions and its withdrawal; and the Procuraduría's engagement of undersigned counsel and its repudiation of the Instrument. Fed. R. Civ. P. 15(d); *Hall*, 437 F.3d at 100–01; *Hicks*, 283 F.3d at

385–86. To the extent any of the added matter is regarded as supplemental rather than amendatory, the Republic seeks leave under Rule 15(d) in the alternative, and "[d]elay and prejudice are precisely the matters to be addressed." *Hall*, 437 F.3d at 101.

## CONCLUSION

For the foregoing reasons, the Republic respectfully requests that the Court dismiss this action for insufficient service of process and want of personal jurisdiction, and decline to entertain Petitioner's cross-motion for entry of judgment until the Republic has been served and has responded; or, should the Court quash service rather than dismiss, direct Petitioner to serve the Republic in the manner and order 28 U.S.C. § 1608(a) prescribes. In the alternative, the Republic requests that the Court receive the pleading attached as Exhibit A as the Republic's answer to the Petition or, failing that, grant leave to file it as the Republic's Amended Answer; and direct that the pleading, attached under LCvR 15.1, be deemed filed upon entry of the Court's order, LCvR 7(i).

Dated: October 5, 2026

Respectfully submitted,

/s/ M. Andrés Sánchez-Ross
M. Andrés Sánchez-Ross (DC Bar No. TX0127)
PARKER, SÁNCHEZ & DONNELLY PLLC
700 Louisiana Street, Suite 4520
Houston, Texas 77002
Telephone: (713) 659-7200
andres@psd.law

Counsel for Respondent the Bolivarian Republic of Venezuela

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, I caused the foregoing document and its exhibits to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including Miguel A. Estrada and Jason W. Myatt of Gibson, Dunn & Crutcher LLP, counsel for Petitioner. Annex 1 to Exhibit B, filed under seal, was served on counsel for Petitioner by electronic mail.

/s/ M. Andrés Sánchez-Ross
M. Andrés Sánchez-Ross