**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CLOROX SPAIN S.L.,

*Petitioner,*

v.

THE BOLIVARIAN REPUBLIC OF VENEZUELA,

*Respondent.*

Civil Action No. 1:24-cv-02060-SLS

Hon. Sparkle L. Sooknanan

ORAL ARGUMENT NOT REQUESTED

**PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND, AND CROSS-MOTION FOR ENTRY OF JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................ 1

BACKGROUND ........................................................ 4

I. The Award ........................................................ 4

II. Service ........................................................ 4

III. The Republic Appears, Answers, and Conditionally Agrees to Entry of Judgment in Clorox's Favor ........................................................ 6

IV. The D.C. Circuit Affirms; the Republic Changes Lawyers and Repudiates Its Representations ........................................................ 8

ARGUMENT ........................................................ 9

I. This Court Is Bound by the Executive's Determination of the Legitimate Government of Venezuela ........................................................ 9

A. The Executive's Recognition Decision Determines Who May Speak for a Foreign State in This Court ........................................................ 9

B. In 2025 the Executive Recognized the 2015 National Assembly, and It Was Thus Authorized to Speak for Venezuela in This Court ........................................................ 10

C. A Change of Government Changes the Republic's Lawyers, Not Its Obligations....... 13

II. The Republic Was Properly Served Under the FSIA ........................................................ 14

A. The Republic Conceded Proper Service When It Accepted This Court's Personal Jurisdiction Over It, and Waived Any Service Objection by Not Pleading It............. 14

B. In Any Event, Service Under Section 1608(a)(3) Was Unavailable Against Venezuela, So Service Under Section 1608(a)(4) Was the Next Step........................................................ 16

C. Dismissal Would Be Improper in Any Event ........................................................ 20

CROSS-MOTION TO ENTER JUDGMENT ........................................................ 21

I. The Court Should Enter the Stipulated Judgment Contemplated by the Instrument.... 21

A. The Instrument Binds the Republic, and Its Condition Has Occurred ........................................................ 21

B. Alternatively, the Court Should Confirm the Award........................................................ 23

C. The Form of Judgment........................................................ 25

CONCLUSION........................................................ 27

# TABLE OF AUTHORITIES

## Cases

*Air Canada v. Venezuela*,
No. 24-cv-2249 (D.D.C.) ....................6, 11

*Air Canada v. Venezuela*,
No. 24-cv-2249 (JDB), 2026 WL 2364365 (D.D.C. Aug. 14, 2026) ....................11

*Angellino v. Royal Fam. Al-Saud*,
688 F.3d 771 (D.C. Cir. 2012) ....................16, 18

*Autera v. Robinson*,
419 F.2d 1197 (D.C. Cir. 1969) ....................21

*Azadeh v. Gov't of the Islamic Republic of Iran*,
318 F. Supp. 3d 90 (D.D.C. 2018) ....................3, 15, 17, 18, 19

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964) ....................9

*Barot v. Embassy of the Republic of Zam.*,
785 F.3d 26 (D.C. Cir. 2015) ....................20

*Casa Express Corp. v. Venezuela*,
No. 21-mc-23103 (S.D. Fla.) ....................5

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*,
605 U.S. 223 (2025) ....................3

*ConocoPhillips Petrozuata B.V. v. Venezuela*,
628 F. Supp. 3d 1 (D.D.C. 2022) ....................17

*Crystallex Int'l Corp. v. Venezuela*,
932 F.3d 126 (3d Cir. 2019) ....................10

*Crystallex Int'l Corp. v. Venezuela*,
No. 17-mc-151-LPS, 2021 WL 129803 (D. Del. Jan. 14, 2021) ....................13

*Doraleh Container Terminal SA v. Republic of Djibouti*,
109 F.4th 608 (D.C. Cir. 2024) ....................12

*G&A Strategic Invs. I LLC v. Petroleos de Venezuela, S.A.*,
810 F. Supp. 3d 463 (S.D.N.Y. 2025) ....................23

*Guar. Tr. Co. of N.Y. v. United States*,
304 U.S. 126 (1938) ....................2, 9, 12, 15

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ....................15

*Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*,
763 F. Supp. 2d 12 (D.D.C. 2011) ........................................................................24

*Koch Minerals Sàrl v. Venezuela*,
514 F. Supp. 3d 20 (D.D.C. 2020) ........................................................19, 20, 22, 23

*Light v. Wolf*,
816 F.2d 746 (D.C. Cir. 1987) ..........................................................................20

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962)..........................................................................................12

*Lovati v. Venezuela*,
No. 19-cv-4796 (S.D.N.Y.)...................................................................................5

*National Empire Construction, Inc. v. Socialist Republic of Viet Nam*,
No. 25-cv-2384 (SLS), 2026 WL 2969265 (D.D.C. Oct. 2, 2026)...........................19, 20

*Neuhauser v. Venezuela*,
No. 20-cv-10342 (AT), 2023 WL 4350614 (S.D.N.Y. July 3, 2023)...........................18

*New Hampshire v. Maine*,
532 U.S. 742 (2001)..........................................................................................22

*Pfizer Inc. v. Gov't of India*,
434 U.S. 308 (1978)..........................................................................................10

*Republic of Iraq v. ABB AG*,
768 F.3d 145 (2d Cir. 2014)...............................................................................13

*The Sapphire*,
78 U.S. (11 Wall.) 164 (1871) ............................................................................13

*Tatneft v. Ukraine*,
301 F. Supp. 3d 175 (D.D.C. 2018) ....................................................................24

*Tidewater Inv. SRL v. Venezuela*,
No. 17-cv-1457 (TJK), 2018 WL 6605633 (D.D.C. Dec. 17, 2018)...........................17

*Trapote v. Venezuela*,
729 F. Supp. 3d 34 (D.D.C. 2024) ......................................................................17

*United States v. All Assets Held at Bank Julius Baer & Co.*,
229 F. Supp. 3d 62 (D.D.C. 2017) ......................................................................24

*United States v. Curtiss-Wright Exp. Corp.*,
299 U.S. 304 (1936)............................................................................................2

*United States v. Mahoney*,
247 F.3d 279 (D.C. Cir. 2001) ............................................................................21

*United States v. Pink*,
315 U.S. 203 (1942)..........................................................................................10

*Venezuela US SRL v. Venezuela*,
178 F.4th 679 (D.C. Cir. 2026) .......... 2

*Venezuela US SRL v. Venezuela*,
No. 25-7096 (D.C. Cir.) .......... 1, 8, 24

*Watch Tower Bible & Tract Soc'y of Pa. v. Russian Fed'n*,
804 F. Supp. 3d 153 (D.D.C. 2025) .......... 17

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017) .......... 16

*Zivotofsky v. Kerry*,
576 U.S. 1 (2015) .......... 9

**Statutes**

9 U.S.C. § 207 .......... 4, 20, 21, 23, 24

28 U.S.C. § 1330(b) .......... 3, 14

28 U.S.C. § 1608(a)(1)–(4) .......... 4, 5, 16, 17, 18, 19

28 U.S.C. § 1961 .......... 26

**Other Authorities**

Hague Conference on Private International Law, Venezuela Declarations / Reservations, Service Convention, https://tinyurl.com/59bja44c (last visited Oct. 26, 2026) .......... 3, 16

Press Statement, Ned Price, Spokesperson, U.S. Dep't of State, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), https://2021-2025.state.gov/briefings/department-press-briefing-january-3-2023/ (last visited Oct. 26, 2026) .......... 11

**Rules**

Fed. R. Civ. P. 12(h)(1) .......... 15

**Regulations**

31 C.F.R. § 591.407 .......... 22

Pursuant to the Court's September 22, 2026, Order, Petitioner Clorox Spain S.L. ("Clorox") respectfully submits this combined opposition and cross-motion for entry of judgment in response to the Bolivarian Republic of Venezuela's ("Venezuela" or the "Republic") motion to dismiss or, in the alternative, for leave to amend, ECF 28, 29.

## INTRODUCTION

This is a simple case. For all their volume, the Republic's arguments fail at the threshold because each rests on a false premise—that the acts and agreements of Venezuela's previously recognized government no longer bind the Republic.

Clorox holds a final arbitration award against Venezuela that the Swiss Federal Supreme Court refused to set aside after rejecting the Republic's arguments and ruling in Clorox's favor no fewer than three times (the "Award"). Clorox petitioned this Court to confirm the Award in July 2024, served the Republic pursuant to the Foreign Sovereign Immunities Act ("FSIA"), and the Republic appeared through counsel in September 2025, took two extensions, began negotiations with Clorox, answered in December 2025, admitted that this Court has personal jurisdiction over it under the FSIA, and pleaded a single defense.

Two days later, Venezuela signed an agreement to stipulate to entry of judgment once the D.C. Circuit decided the appeal in *Venezuela US SRL v. Venezuela*, No. 25-7096 (D.C. Cir.), which addressed the same public policy defense Venezuela raised in its Answer here—whether, because the government that directed the defense of the foreign arbitration was not the government of Venezuela recognized by the United States, the Award should be denied recognition as inconsistent with U.S. public policy, including the President's authority to recognize the legitimate regime of a foreign sovereign or, separately, whether public policy precludes confirmation out of respect for foreign sovereignty and the separation of powers.

For months the Republic told this Court that the case would end in a stipulated judgment. The D.C. Circuit affirmed the district court in *Venezuela US SRL* on June 12, 2026, holding that neither alleged public policy concern justified denying a petition to confirm an arbitration award. *See Venezuela US SRL v. Venezuela*, 178 F.4th 679, 683 (D.C. Cir. 2026).

Venezuela then reneged on its commitment to stipulate to entry of judgment against it. Instead, it now cites the United States's change in recognition of the government of Venezuela—from the 2015 National Assembly to the government of Acting President Delcy Rodríguez—and argues that nothing that happened under the previously recognized government counts. Venezuela's request that the Court wipe the slate clean—effectively erasing not only its agreement to stipulate to entry of judgment once its only asserted defense failed (which it did earlier this year), but also its appearance, its Answer, and its acceptance of the Court's jurisdiction over it—fails on the law and the facts for two straightforward reasons.

**First, Venezuela is Venezuela, regardless of who is in charge.** "Rulers come and go; governments end and forms of government change; but sovereignty survives." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 316–17 (1936). Which government speaks for a foreign state in an American court "is a political rather than a judicial question," and the Executive's answer "is conclusive on all domestic courts." *Guar. Tr. Co. of N.Y. v. United States*, 304 U.S. 126, 137–38 (1938). In 2025 the Executive's answer was that the 2015 National Assembly was the government of Venezuela. *See* ECF 29 at 9. The Republic concedes that fact, and it also concedes that recognition "limited what the Republic's [domestic] government, and the Procuraduría through which it litigates, could do in the courts of the United States" until March 2026. *Id.* at 3, 28. The Republic therefore appeared, answered, and agreed to consent to a stipulated judgment through the representatives the Executive recognized—the only ones

permitted to speak on its behalf in this Court. Its new lawyers cannot undo what the Republic did through the government the United States recognized at the relevant time.

**Second, Clorox properly served the Republic under the FSIA, and the Republic has already conceded as much.** When Venezuela joined the Hague Service Convention (the "Hague Convention"), it declared that it "does not agree to the transmission of documents through postal channels." Hague Conference on Private International Law, Venezuela Declarations / Reservations, Service Convention, https://tinyurl.com/59bja44c (last visited Oct. 26, 2026). Where that objection exists, the FSIA's third method of service, a clerk's mailing to the foreign minister, is "categorically unavailable," and the plaintiff proceeds to the fourth method—service through diplomatic channels. *Azadeh v. Gov't of the Islamic Republic of Iran*, 318 F. Supp. 3d 90, 99 (D.D.C. 2018) (Jackson, J.). Three judges in this District have applied that rule to Venezuela, and Venezuela's own lawyers have told two other federal courts the same thing. In any event, the Republic's Answer admitted that this Court has personal jurisdiction under 28 U.S.C. § 1330(b), which under the FSIA is an admission of proper service, because "subject matter jurisdiction plus service of process equals personal jurisdiction." *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223, 233 (2025) (internal quotation marks omitted). Moreover, the Republic's own brief concedes it did not raise a service defense in its Answer and that defense is therefore waived. *See* ECF 29 at 30.

Because the Republic's arguments fail as a matter of law, the December 12, 2025, Conditional Partial Settlement Agreement (the "Instrument") is enforceable and judgment can and respectfully should be granted in Clorox's favor. Alternatively, Clorox's pending recognition petition should be granted, as the Republic's Answer offers no remaining defense to entry of judgment. Even if the Instrument were disregarded, the Republic answered the Petition more than

ten months ago, and its only defense has been rejected by the D.C. Circuit. No change in government entitles it to a do-over. And even if it could amend its Answer at this late stage, it offers no meaningful defense to recognition of the Award.

Accordingly, the Republic's motion should be denied, and Clorox's cross-motion for entry of judgment should be granted.

## BACKGROUND

### I. The Award

A tribunal seated in Geneva, Switzerland, under the Spain–Venezuela bilateral investment treaty found that Venezuela unlawfully expropriated Clorox's Venezuelan business and, by Final Award dated August 9, 2023, awarded Clorox US$ 104,102,806 plus interest and US$ 4,959,729.27 in costs. ECF 1-1 ¶¶ 832, 836–39. The Swiss Federal Supreme Court rejected the Republic's application to set the Award aside on April 26, 2024, and on July 16, 2024, Clorox petitioned this Court to confirm the Award under the New York Convention and 9 U.S.C. § 207. ECF 1 ¶¶ 34–37.

### II. Service

Section 1608(a) of the FSIA lists four methods for serving a foreign state, to be used in order: (1) a special arrangement between the parties; (2) an applicable international service convention; (3) "if service cannot be made" under those, a clerk's mailing to the head of the ministry of foreign affairs; and (4) "if service cannot be made within 30 days" by mail, transmission by the Secretary of State "through diplomatic channels." 28 U.S.C. § 1608(a)(1)–(4). There was no special arrangement, so Clorox moved to the second method of service. On August 16, 2024, Clorox transmitted a request under the Hague Convention to Venezuela's designated Central Authority, the Ministry of Foreign Affairs in Caracas, which received it on August 21,

2024. ECF 5 at 3; ECF 8 at 1. The Central Authority never served the papers and never returned the certificate the Hague Convention requires.[1] ECF 8 at 1–2. After six months, Clorox determined that the second method of service had failed and that the third method of service—a clerk's mailing to the foreign minister—was unavailable. Clorox informed the Court on February 7, 2025, that "in light of the Central Authority's pattern of inaction and general guidance that six months should be adequate time for a Central Authority to complete service, absent receipt of a completed service return by February 16, 2025, Petitioner will proceed to service via diplomatic means by requesting the Clerk of Court's assistance in dispatching a copy of the summons, petition, and notice of the suit (with corresponding Spanish translations) to the United States Department of State for service on Venezuela." ECF 8 at 2. When February 16 came and went, Clorox did exactly what it had told the Court it would do and asked the Clerk to dispatch service papers to the Secretary of State under § 1608(a)(4). ECF 9, 10. Clorox's request explained that service by mail was unavailable because Venezuela had declared under Article 10 of the Hague Convention that it "does not agree to the transmission of documents through postal channels," and, in any event, there was "no recognized foreign minister" to whom Clorox could address service. ECF 9-1 at 3 n.5. And Clorox took the then-recognized government at its word: "[t]he only method of service currently available against the Republic is set forth in § 1608(a)(4)." ECF 9-1 at 1 (quoting the Republic's filings in *Casa Express Corp. v. Venezuela*, No. 21-mc-23103 (S.D. Fla.), and *Lovati v. Venezuela*, No. 19-cv-4796 (S.D.N.Y.)). The Clerk dispatched the papers on March 7, 2025, ECF 11, and the Department of State delivered them under cover of a diplomatic note on

[1] The new Venezuelan government denies receipt only of "the papers described in the Return of Service filed by Petitioner (ECF No. 12)," that is, the summons and Petition delivered through diplomatic channels on July 18, 2025. ECF 28-3 ¶ 9. It does not deny that Venezuela's Ministry of Foreign Affairs received the Hague request in August 2024.

July 18, 2025, to the representative in Washington of the government recognized by the United States at the time, with a request that they be forwarded "to the appropriate authority of the Bolivarian Republic of Venezuela." ECF 12 at 2.[2]

### III. The Republic Appears, Answers, and Conditionally Agrees to Entry of Judgment in Clorox's Favor

On September 15, 2025, Vinson & Elkins LLP appeared for "the Bolivarian Republic of Venezuela" and moved, by consent, to extend the Republic's time to respond. ECF 13, 14. A second extension followed after the parties "began discussions aimed at resolving this instant litigation." ECF 18 at 1.

On December 10, 2025, the Republic filed its Answer to the Petition. ECF 20. In that Answer, Venezuela admitted that this Court has subject-matter jurisdiction, that "[t]his Court has personal jurisdiction over Venezuela pursuant to the FSIA," and that venue is proper, ECF 20 ¶¶ 3, 7–8, and it pleaded as its sole defense that the Award offends public policy because the Republic was represented in the arbitration by counsel appointed by the Maduro regime. *Id.* at 22. The Answer stated that the Republic "is represented here by the Consejo de Administración y Protección de Activos ('CAPA'), which was appointed by the democratically-elected government of Venezuela that is recognized by the United States." *Id.* ¶ 17.

[2] The Republic attempts to mischaracterize Clorox's request as evidence that there was no recognized government of Venezuela at the time of service. Clorox's request to the Clerk went to great lengths to describe the status of Venezuela's recognized government and the Maduro regime then in control in the country. It is true that Clorox stated "that there is no currently recognized Venezuelan government . . . ." What the Republic omits is the end of that sentence, that there was no way of "sending the required process 'directly to the foreign minister's office *in the foreign state*.'" ECF 9-1 at 3. The fact that the lack of a recognized government on the ground in Caracas prevented Clorox from serving the foreign minister "in the foreign state" in no way undercuts the U.S. government's longstanding "recogni[tion of] the 2015 National Assembly as the government of Venezuela." ECF 29 at 9 (quoting the letter of Ambassador Michael G. Kozak filed in *Air Canada v. Venezuela*, No. 24-cv-2249 (D.D.C.), ECF 11-4).

The same day, the parties jointly moved to stay the case, reporting that they had "agreed in principle to a conditional partial settlement" and that "[s]hould the appellate court presiding over the related litigation [*Venezuela US SRL*] affirm the lower court's decision, the Parties have agreed to file a stipulation of judgment confirming Petitioner's Award in this case." ECF 19 at 2. Two days later, on December 12, 2025, the parties executed the Instrument. ECF 28-2 ¶ 2.[3]

The Instrument recites that in January 2023 the Department of State "acknowledged the authority of the 2015 National Assembly . . . to act on behalf of the Republic . . . including with respect to taking actions before courts in the United States," and that "the Parties are in agreement that the Court has jurisdiction over the Action." Instrument at 2. It provides that upon an "Affirmance" in *Venezuela US SRL*, which occurs upon issuance of the decision "regardless of whether any party seeks rehearing, rehearing en banc, or certiorari," the Republic's "defenses under the New York Convention shall be deemed waived" and the parties "shall file with the Court the Stipulated Judgment in the form attached as Exhibit A" within fourteen days. *Id.* ¶ 2. Absent an Affirmance, the Republic expressly agreed that it could assert only the Maduro-representation defense; "[f]or the avoidance of doubt, the Republic hereby waives any other defenses to recognition of the Award." *Id.* ¶ 3. Each party further warranted that it "has the full power and authority to enter into this Agreement" and that "the person signing on its behalf is duly authorized to do so." *Id.* ¶ 8. Exhibit A to the Instrument is a stipulation and proposed judgment confirming the Award and awarding principal, interest at the Award's rate, and costs. *Id.* Ex. A.

[3] The Instrument is on the docket under seal as ECF 30-1 (Annex 1 to ECF 28-2). Its text is quoted here as paragraph 5 of the Instrument permits: its terms "may be disclosed to the Court and, to the extent necessary, filed on the public docket to obtain the relief contemplated herein." Instrument ¶ 5; *see* ECF 28-2 ¶ 4.

The Court granted the parties' request for a stay on December 12, 2025, and, in three further status reports, the Republic told the Court that the Instrument had been "subsequently executed on December 12, 2025" and repeated that the parties would file a stipulation of judgment on affirmance of the district court's decision in *Venezuela US SRL*. ECF 21, 22, 23 at 2 & n.1; *see* ECF 29 at 31–32 (acknowledging those representations).

## IV. The D.C. Circuit Affirms; the Republic Changes Lawyers and Repudiates Its Representations

The D.C. Circuit affirmed in *Venezuela US SRL* on June 12, 2026, rejecting the same Article V(2)(b) defense the Republic had pleaded here. *Venezuela US SRL*, 178 F.4th at 683–85. By then the United States had recognized the government of Acting President Delcy Rodríguez, ECF 29 at 18–19, and the Republic's prior counsel informed Clorox that it was "unable to obtain instructions from the Republic," ECF 24 at 2. New counsel, engaged by the Procuraduría General de la República in Caracas, appeared in this Court on July 22, 2026. ECF 25. Clorox tendered the Stipulated Judgment to Venezuela on August 5, 2026, but, on September 18, the Republic refused to sign it. ECF 28-2 ¶ 3; ECF 28-3 ¶ 14. On October 5, the Republic moved to dismiss for insufficient service or, alternatively, for leave to file an amended answer. ECF 28, 29.

If Venezuela were granted leave to file the amended answer (it should not be), it would withdraw the only defense the Republic has ever pleaded in this case, because the Rodríguez government no longer considers it a public policy concern that its domestic predecessors (the Maduro-controlled Procuraduría) defended the arbitration. *See* ECF 28-3 ¶¶ 11, 15; ECF 29 at 36. Instead, the Republic would plead that service was defective; that the Instrument does not bind it; that the Award states no numerical rate of interest; that its property is immune from execution; that Clorox made no "investment" under the treaty; and that the Award offends public policy because of a document, offered by Clorox, that the tribunal excluded in 2018. ECF 28-1 at 34–47.

Venezuela concedes, however, that its argument that Clorox made no "investment" is foreclosed by circuit precedent and pleads that defense only "to preserve [it]" for en banc or Supreme Court review, ECF 28-1 at 38–39 n.1, and that its argument that the Award offends public policy due to the tribunal's alleged exclusion of a document in 2018 "cannot, at this time, be relitigated in this forum," *id.* at 42–43 n.2. And whether Venezuela's property is immune from attachment is irrelevant at this stage, as Clorox currently seeks only confirmation of the Award, not attachment of a specific asset. That leaves only Venezuela's arguments that service was defective, that the Instrument does not bind Venezuela, and that the Award's interest rate is indeterminate. Each of these remaining arguments is addressed below.

## ARGUMENT

### I. This Court Is Bound by the Executive's Determination of the Legitimate Government of Venezuela

#### A. The Executive's Recognition Decision Determines Who May Speak for a Foreign State in This Court

Every argument in the Republic's brief turns on its request that this Court decide for itself who was the legitimate government of Venezuela in 2025. But our Constitution delegates that question to the Executive, not the judiciary. "What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government. . . . Its action in recognizing a foreign government and in receiving its diplomatic representatives is conclusive on all domestic courts, which are bound to accept that determination." *Guar. Tr. Co. of N.Y. v. United States*, 304 U.S. 126, 137–38 (1938). "Political recognition is exclusively a function of the Executive." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964); *see Zivotofsky v. Kerry*, 576 U.S. 1, 14 (2015) ("Recognition is a topic on which the Nation must speak with one voice. That voice must

be the President's.") (internal quotation marks and alteration omitted). And only the recognized government may act for the state in our courts. *Pfizer Inc. v. Gov't of India*, 434 U.S. 308, 319–20 (1978) ("only governments recognized by the United States . . . are entitled to access to our courts, and . . . it is within the exclusive power of the Executive Branch to determine which nations are entitled to sue").

Applying these principles, the Supreme Court long ago reversed an attempt by courts in New York to determine the legitimate representative of a foreign government for themselves. *See United States v. Pink*, 315 U.S. 203, 229–30 (1942) ("Objections to the underlying policy as well as objections to recognition are to be addressed to the political department and not to the courts," and "[w]e would usurp the executive function if we held that that decision was not final and conclusive in the courts."). The Third Circuit applied the same rule to Venezuela in 2019, recognizing former 2015 National Assembly President "Guaidó's regime as authorized to speak and act on behalf of Venezuela" under *Guaranty Trust* without pausing to analyze who controlled aspects of Venezuelan life on the ground in Caracas. *Crystallex Int'l Corp. v. Venezuela*, 932 F.3d 126, 132 n.2 (3d Cir. 2019). The Republic itself invokes *Guaranty Trust* for the rule that recognition decides who may litigate for a foreign state following the recognition of the Rodríguez government in 2026. ECF 29 at 25, 28–29. Venezuela cannot invoke the rule for 2026 and disown it for 2025.

### B. In 2025 the Executive Recognized the 2015 National Assembly, and It Was Thus Authorized to Speak for Venezuela in This Court

There is no dispute about which government of Venezuela the Executive recognized when the Republic was served, appeared, answered, and signed the Instrument in this case. In January 2023 the Department of State announced that the United States "continue[s] to recognize what is the only remaining democratically elected institution in Venezuela today, and that's the 2015

National Assembly." Press Statement, Ned Price, Spokesperson, U.S. Dep't of State, Venezuela's Interim Government and the 2015 National Assembly (Jan. 3, 2023), https://2021-2025.state.gov/briefings/department-press-briefing-january-3-2023/ (last visited Oct. 26, 2026). On August 29, 2025, two weeks before the Republic appeared here, the Department advised the Department of Justice, for filing in federal court, that "the United States recognizes the 2015 National Assembly as the government of Venezuela." ECF 29 at 9 (quoting the letter of Ambassador Michael G. Kozak filed in *Air Canada v. Venezuela*, No. 24-cv-2249 (D.D.C.), ECF 11-4). Recognition shifted to the Rodríguez government in March 2026, *id.* at 11–12, three months *after* Venezuela filed its Answer and executed the Instrument.[4]

From September 2025 through December 2025, therefore, the only government that could act for Venezuela in this Court was the 2015 National Assembly. The Republic concedes as much, admitting that, "[f]rom January 2019 until March 2026, the recognition decisions of the Executive then in force limited what the Republic's government [i.e., the Maduro regime and the Rodríguez government], and the Procuraduría through which it litigates, could do in the courts of the United States." ECF 29 at 28 (citing *Guar. Tr.* and *Pfizer*).

In short, the Procuraduría could not have been the Republic's voice in these proceedings in December 2025. On the other hand, the representatives of the National Assembly government recognized by the United States at the time confirmed that they were authorized to act as "Counsel for Respondent, the Bolivarian Republic of Venezuela" in filings before this Court and in the Instrument, ECF 28-2 ¶ 2; Instrument ¶ 8 (representing that counsel was "duly authorized" to act

[4] That is why Judge Bates recognized the authority of lawyers appointed by the Rodríguez government to represent Venezuela in August 2026. *Air Canada v. Venezuela*, No. 24-cv-2249 (JDB), 2026 WL 2364365, at *5 (D.D.C. Aug. 14, 2026). To the extent Venezuela attempts to rely on *Air Canada* to dispute the authority of lawyers appointed by the National Assembly to speak for Venezuela before March 2026, that claim is baseless.

on behalf of Venezuela). And Venezuela, like any other party, "is deemed bound by the acts of [its] lawyer-agent" engaged to represent the Republic in this Court. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962). The recognition of a new government does not negate the Republic's prior acts through counsel. On the contrary, because "[t]he very purpose of the recognition by our government is that our nationals may be conclusively advised with what government they may safely carry on business transactions and who its representatives are," the Executive's recognition of a new government leaves "unaffected th[e] legal consequences of the previous recognition." *Guar. Tr.*, 304 U.S. at 140–41.

*Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608 (D.C. Cir. 2024), on which the Republic leans, does not change the analysis. *See* ECF 29 at 23, 37. There, a Djiboutian court had placed the petitioner company under an administrator who disavowed the suit, and the D.C. Circuit held that such "substantial reasons" to doubt counsel's authority obliged the district court to inquire as to its authority to act on its purported client's behalf. *Doraleh*, 109 F.4th at 613–14. No such substantial reasons are present here. Venezuela rightly does not accuse its prior counsel of misrepresenting its authority with respect to the then-recognized government of Venezuela. Rather, it simply disagrees with the Executive's determination as to which competing government had the right to appoint counsel in this case in 2025. But that is not a decision this Court (or Venezuela) is entitled to question.[5]

---

[5] Relying on the fact that there was ongoing litigation over proper representation in another case in another district, Venezuela argues that the question of representation was one for the Court. ECF 29 at 26–28 (discussing *Stansell*). Putting aside that *Stansell* did not involve litigation over which counsel could represent Venezuela, but rather PDVSA and its subsidiaries, and further putting aside Venezuela's acknowledgment that at least one other court had already resolved that the representation question "turned on 'who the United States has recognized as Venezuela's government,'" ECF 29 at 27–28 n.7 (citing *Caballero*), neither the Maduro regime nor the Rodríguez government contemporaneously challenged the right of the U.S.-recognized government of Venezuela to represent the country in this proceeding.

### C. A Change of Government Changes the Republic's Lawyers, Not Its Obligations

What remains is the Republic's suggestion that recognition of the Rodríguez government in March 2026 wiped the slate clean, so that this proceeding should be treated "as to the Republic, as beginning on the day it appeared through authorized counsel." ECF 29 at 29. It did not. "The reigning Emperor, or National Assembly, or other actual person or party in power, is but the agent and representative of the national sovereignty. A change in such representative works no change in the national sovereignty or its rights." *The Sapphire*, 78 U.S. (11 Wall.) 164, 168 (1871). "The next successor recognized by our government is competent to carry on a suit already commenced"; it takes the case as it finds it. *Id.* The Second Circuit applied the same rule to hold post-Saddam Iraq responsible for the conduct of the Hussein regime: "the legal position of a foreign state survives changes in its government," and "the obligations of a foreign state are unimpaired by a change in that state's government." *Republic of Iraq v. ABB AG*, 768 F.3d 145, 163–64 (2d Cir. 2014).

Courts have applied the same rule to Venezuela, refusing to let it reopen a judgment because its recognized government changed. *See, e.g., Crystallex Int'l Corp. v. Venezuela*, No. 17-mc-151-LPS, 2021 WL 129803, at *7 (D. Del. Jan. 14, 2021) (internal quotation marks and alterations omitted) (holding that changes in government "occur regularly, and to allow such events to support a Rule 60(b)(6) motion would wholly negate the finality of judgments"). The Republic agreed to arbitrate with Clorox under a treaty it signed. It defended the arbitration through the Procuraduría. It lost, and it lost its challenges in Switzerland. It appeared in this Court through the government the United States recognized, admitted jurisdiction, agreed to stipulate to entry of judgment, and confirmed that agreement to this Court four times. The party that did each of those things is the same party that stands before the Court today: the Bolivarian Republic of

Venezuela. That the Maduro regime or the Rodríguez government might have taken a different position had it been calling the shots earlier is irrelevant. The Executive determines who speaks for the Republic, and when the Republic appeared, answered, and signed the Instrument, that voice was the 2015 National Assembly's. The fact that the Republic's lawyers and government have changed does not excuse Venezuela from its obligations.

## II. The Republic Was Properly Served Under the FSIA

### A. The Republic Conceded Proper Service When It Accepted This Court's Personal Jurisdiction Over It, and Waived Any Service Objection by Not Pleading It

On December 10, 2025, the recognized government of the Republic conceded proper service when it admitted that "[t]his Court has personal jurisdiction over Venezuela pursuant to the FSIA. 28 U.S.C. § 1330(b)." ECF 20 ¶ 7. Under the FSIA, that admission is an admission of service. Section 1330(b) provides that personal jurisdiction over a foreign state "shall exist" as to every claim within the court's subject-matter jurisdiction "where service has been made under section 1608." 28 U.S.C. § 1330(b). The Supreme Court held last year that the provision "imposes two substantive requirements," an applicable immunity exception and service under § 1608, and that personal jurisdiction is "automatic" when both are met: "subject matter jurisdiction plus service of process equals personal jurisdiction." *Devas*, 605 U.S. at 232–33 (internal quotation marks omitted). The Republic admitted both halves of that equation. It admitted subject-matter jurisdiction under § 1330(a) and it admitted personal jurisdiction under § 1330(b) without qualification. ECF 20 ¶¶ 3, 7.

Independently, the Republic waived any objection to service by omitting that objection from its Answer and every other filing. A defense of insufficient service or lack of personal jurisdiction is waived if a party omits it from its first Rule 12 motion or its responsive pleading.

Fed. R. Civ. P. 12(h)(1); *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982) ("[T]he failure to enter a timely objection to personal jurisdiction constitutes, under Rule 12(h)(1), a waiver of the objection"). Nothing in the FSIA exempts foreign states from that rule, and the Republic agrees: "A defense of insufficient service is waived if the party fails to raise it by motion or in its responsive pleading." ECF 29 at 23.[6]

The Republic did not raise a defense based on improper service. Although its notices of appearance reserved objections to service, they did so only as to "[t]his appearance, and the related Consent Motion for Extension of Time to Respond to Petition to Enforce Arbitration Award." ECF 13, 17. The reservation was not repeated in the stipulation for a second extension, ECF 18, in the joint motion to stay, ECF 19, or in Venezuela's Answer, which admitted venue and personal jurisdiction, and pleaded no service defense, ECF 20 ¶¶ 7–8.

The Republic's only answer is that the Answer "[w]as [n]ot the Republic's" because the lawyers who filed it were engaged by CAPA rather than by the Procuraduría. ECF 29 at 23–24.[7] That is not a service argument. It is an argument that the government recognized by the United

---

[6] The court's remark in *Azadeh* that the defect in service was "not a waivable or otherwise excusable defect" is irrelevant here; *Azadeh* concerned a default in which the sovereign never appeared and it addressed whether a court may excuse a defect in equity, not whether a defendant that appears and answers without objecting to allegedly improper service has waived that defense. *See Azadeh*, 318 F. Supp. 3d at 100.

[7] The Republic attempts to invoke Venezuelan law to argue that only the Procuraduría has the power to appoint counsel. But no amount of Venezuelan law can undo the Executive's recognition of the 2015 National Assembly as the government of Venezuela when the Republic appeared, answered, and signed the Instrument—or the authority of CAPA, which acted under the Assembly's authority. The Supreme Court addressed the same argument nearly ninety years ago, and explained that it "ignores the distinction between the effect of our recognition of a foreign government with respect to its acts within its own territory prior to recognition, and the effect upon previous transactions consummated here between its predecessor and our own nationals. The one operates only to validate to a limited extent acts of a de facto government which, by virtue of the recognition, has become a government de jure. But it does not follow that recognition renders of no effect transactions here with a prior recognized government in conformity to the declared policy of our own government." *Guar. Tr.*, 304 U.S. at 140.

States in 2025 was not entitled to speak for Venezuela in this Court. That is wrong and has been for over a century, as addressed above. *See supra* Part I.

### B. In Any Event, Service Under Section 1608(a)(3) Was Unavailable Against Venezuela, So Service Under Section 1608(a)(4) Was the Next Step

Section 1608(a) lists four methods to effect service on a foreign sovereign "in descending order of preference," and a plaintiff "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino v. Royal Fam. Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012) (internal quotation marks omitted). That parenthetical matters. The statute does not require a plaintiff to attempt service through methods that are not available; it requires the plaintiff to move to the next method when service under the prior one "cannot be made." 28 U.S.C. § 1608(a)(3), (4). The Republic concedes that no special arrangement existed and that the Hague request to Venezuela's Central Authority was never executed. ECF 29 at 23–24. Thus, the only question is whether the third method, a clerk's mailing "by any form of mail requiring a signed receipt" to the head of Venezuela's ministry of foreign affairs, could be made. 28 U.S.C. § 1608(a)(3). It could not.

Venezuela's own objections to the Hague Convention confirm service by mail was unavailable. The Hague Convention permits service by "postal channels" only where "the State of destination does not object," and the Supreme Court has held that in cases governed by the Hague Convention, service by mail is permissible only if "the receiving state has not objected to service by mail." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 275, 284 (2017). Venezuela, in its declaration on accession to the Hague Convention, made clear that it "does not agree to the transmission of documents through postal channels." Hague Conference on Private International Law, Venezuela Declarations / Reservations, Service Convention, https://tinyurl.com/59bja44c (last visited Oct. 26, 2026); ECF 9-1 at 3 n.5. Service by mail was thus unavailable in this case,

and Clorox was under no obligation to attempt service through a method Venezuela rejected when it acceded to the Hague Convention.[8]

That is how the judges of this District have read the statute. Judge Jackson (as she then was) explained that for the states that "specifically objected to service by mail when they acceded to the Hague Convention," "the method of service proscribed in section 1608(a)(3) is categorically unavailable when attempting to serve those countries." *Azadeh*, 318 F. Supp. 3d at 99. Judge Contreras applied that rule to a motion to dismiss filed by the Russian Federation, finding that, because Russia objected to Article 10, "service by mail is categorically impermissible in Russia," and the plaintiff "still ha[d] access to the FSIA's fourth method for service of a foreign state: service through diplomatic channels." *Watch Tower Bible & Tract Soc'y of Pa. v. Russian Fed'n*, 804 F. Supp. 3d 153, 161–63 (D.D.C. 2025). Indeed, three judges of this District have applied the rule to Venezuela. *See Tidewater Inv. SRL v. Venezuela*, No. 17-cv-1457 (TJK), 2018 WL 6605633, at *5 (D.D.C. Dec. 17, 2018) (service under § 1608(a)(3) "unavailable" because "Venezuela expressly objected to service by mail when it acceded to the Hague Convention"); *ConocoPhillips Petrozuata B.V. v. Venezuela*, 628 F. Supp. 3d 1, 8–9 (D.D.C. 2022) ("[o]ther Courts in this District have concluded that, in these circumstances, it is appropriate to move to the fourth method, and the Court agrees"); *Trapote v. Venezuela*, 729 F. Supp. 3d 34, 37 (D.D.C. 2024) ("Plaintiffs argue that this method is inapplicable because Venezuela has formally objected to

[8] Section 1608(a)(4) also applies "if service cannot be made within 30 days under paragraph (3)." 28 U.S.C. § 1608(a)(4). The Republic reads the thirty-day clause to require a mailing in every case. ECF 29 at 16–17. But the thirty-day rule only applies where service under paragraph (3) can be tried and fails. Where service is unavailable, there is nothing to measure. In *Azadeh*, the court found that the plaintiff "had an obligation to at least try to serve Defendants under that FSIA provision for a period of thirty days" because Iran had not objected to service through postal channels. *Azadeh*, 318 F. Supp. 3d at 99. But, for states that have objected, the third method "is categorically unavailable." *Id.*

service by mail. . . . The court agrees.").[9] The Republic offers no decision holding § 1608(a)(3) available against a state that has objected to service by mail under Article 10. ECF 29 at 21–22. Indeed, Venezuela's own lawyers told the Southern District of New York and the Southern District of Florida that "[t]he only method of service currently available against the Republic is set forth in § 1608(a)(4), which allows for service through diplomatic channels." ECF 9-1 at 1. The Republic now says that "a litigant's statement in another proceeding neither amends the statute nor decides its application here." ECF 29 at 21. But whether Venezuela objected to service by mail is a factual question, and Venezuela's own representations confirm the obvious. It did object, which renders § 1608(a)(3) unavailable here.

Because service by mail is clearly not available, it appears that the Republic's real complaint is with a procedural requirement that does not exist—a supposed requirement that the Court confirm service by mail is unavailable before a plaintiff may move to service under § 1608(a)(4). But nothing in § 1608(a) requires such a motion or an order. And the Republic offers no authority holding that one is required. Rather, the rule the D.C. Circuit adopted places the determination on the plaintiff, who "must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Angellino*, 688 F.3d at 773 (internal quotation marks omitted). *Azadeh* applied it that way, holding that the plaintiff there "correctly determined that the methods of service in sections 1608(a)(1) and 1608(a)(2) were unavailable" without any motion or order. *Azadeh*, 318 F. Supp. 3d at 98–99. The Republic cites

[9] The Southern District of New York has reached the same conclusion. *See Neuhauser v. Venezuela*, No. 20-cv-10342 (AT), 2023 WL 4350614, at *2 (S.D.N.Y. July 3, 2023) (citations omitted) ("[S]ervice under § 1608[(a)(3)] is 'categorically unavailable' because Venezuela expressly objects to service by mail. Accordingly, service on Defendant, effected by the United States Department of State delivering the complaint and related papers to the Venezuelan embassy in Washington, D.C. was proper pursuant to § 1608(a)(4).").

several cases involving Iran, all of which are inapposite because Iran is not a party to the Hague Convention and it "accepts service through the procedures laid out in section 1608(a)(3) with some frequency," so service by mail on Iran is difficult but not unavailable. *Id.* at 99. This Court's decision in *National Empire Construction, Inc. v. Socialist Republic of Viet Nam*, No. 25-cv-2384 (SLS), 2026 WL 2969265 (D.D.C. Oct. 2, 2026), considered the same issue: Viet Nam's ministry expressly stated that it would "not make an official declaration" requiring service through diplomatic channels, so the third method of service remained available and the plaintiff had to try it before moving on to the fourth. *Nat'l Empire*, 2026 WL 2969265, at *3. Unlike Viet Nam, whose Article 10(a) declaration permits service by registered mail, *Venezuela affirmatively declared that service by mail is unavailable*, and Clorox was therefore not required to attempt it. In any event, none of Venezuela's cases suggests that any assessment of the availability of § 1608(a)(3) must be made by the Court in advance.

Finally, the papers reached Venezuela through both of the channels the Republic says matter. There is no dispute that the diplomatic delivery went to the representative of the National Assembly government that the United States then recognized. *See* ECF 29 at 17 (recipient was "designated by the authorities the 2015 National Assembly purported to install"). Under § 1608(a)(4) the Department of State, not the plaintiff, chooses the diplomatic channel, and it delivered the papers with a request that they be forwarded "to the appropriate authority of the Bolivarian Republic of Venezuela." ECF 12 at 2. The Republic's sole remaining objection—that the recipient had "no authority" under Venezuelan law to receive process, ECF 29 at 17—is defeated by Venezuela's own concession that a plaintiff who serves a foreign state "serves the state, not the momentary steward at its helm," ECF 28-1 at 46 n.3 (quoting *Koch Minerals Sàrl v. Venezuela*, 514 F. Supp. 3d 20, 37 (D.D.C. 2020)). Nor does the Republic dispute that Clorox's

Hague request went to the Republic's own Central Authority in Caracas, the ministry that, on the Republic's account, was obliged to pass the papers to the Procurador General.[10]

### C. Dismissal Would Be Improper in Any Event

Were the Court to find a defect in service, the remedy would be to quash and permit re-service, not to dismiss. "[D]ismissal is not appropriate when there exists a reasonable prospect that service can be obtained," *Barot v. Embassy of the Republic of Zam.*, 785 F.3d 26, 29 (D.C. Cir. 2015) (internal quotation marks omitted), and this Court so held earlier this month on a contested motion, giving the plaintiff thirty days to cure where the defendant "articulated [no] prejudice" and the FSIA "imposes 'no statutory deadline for service,'" *Nat'l Empire*, 2026 WL 2969265, at *4. The Republic articulates no prejudice here either. It has had actual notice of this case since at least September 2025, and it has already drafted the answer it would file. ECF 28-1. Dismissal, by contrast, would invite the Republic to attempt the argument that Clorox's claim is time-barred under 9 U.S.C. § 207, as Venezuela has already previewed. *See* ECF 29 at 25 (citing *Light v. Wolf*, 816 F.2d 746, 751 n.15 (D.C. Cir. 1987)). Although Clorox is confident such a defense would ultimately be rejected, it is difficult to see the sense in inviting yet another unnecessary dispute just because Clorox declined to attempt service in a manner rendered unavailable by Venezuela's own objections to the Hague Convention.

---

[10] It is of no moment that, consistent with the Maduro regime's "documented history of playing a shell game: circumventing service by refusing to issue a certificate when the party to be served is the *same entity* that it has designated as its Central Authority," *Koch Minerals*, 514 F. Supp. 3d at 34, the Republic did not forward the papers to either the then-recognized government or Maduro's Procurador General, ECF 29 at 16.

**CROSS-MOTION TO ENTER JUDGMENT**

Because Venezuela is bound by its prior actions, as discussed above, this case can and respectfully should be resolved now. Accordingly, Clorox cross-moves to enforce the Instrument under the Court's inherent authority to enforce settlements in pending cases, *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969), and alternatively to confirm the Award under 9 U.S.C. § 207.

**I. The Court Should Enter the Stipulated Judgment Contemplated by the Instrument**

**A. The Instrument Binds the Republic, and Its Condition Has Occurred**

A district court has inherent power to enforce a settlement agreement in a case pending before it, and it may do so summarily unless a material fact about the agreement's existence or terms is genuinely in dispute. *Autera*, 419 F.2d at 1200; *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001). No such fact is in dispute here. The Instrument's existence, text, and signatures are authenticated by the Republic's own declarant. ECF 28-2 ¶ 2. Its condition has occurred: *Venezuela US SRL* was affirmed on June 12, 2026, which is an Affirmance "regardless of whether any party seeks rehearing, rehearing en banc, or certiorari." Instrument ¶ 2. On Affirmance, the Republic's New York Convention defenses were "deemed waived," and the Stipulated Judgment was due within fourteen days, by June 26, 2026. *Id.*

The only dispute the Republic raises is whether the prior government's lawyers had authority to act for Venezuela. That is not a "genuine dispute;" it is a frivolous assertion at odds with clear and binding precedent. Unlike *Autera*, the question of authority here is not one of fact, but one of U.S. law. And there is no dispute that the National Assembly was the recognized government of Venezuela.

Nor does it help the Republic to observe that a lawyer's retention alone does not carry authority to settle. ECF 29 at 35. No one contends that Vinson & Elkins settled on its own authority. The Answer identified the principal on whose behalf counsel acted, ECF 20 ¶ 17, and the Republic has never denied that CAPA and the Assembly authorized the Instrument. And, again, as a matter of U.S. law the Assembly—and CAPA, acting under its authority—spoke for the Republic.

The Republic is also estopped. It obtained a nine-month stay by telling this Court in four filings that it would stipulate to entry of judgment on affirmance, and the Court relied on those representations in staying the case and in setting this schedule. ECF 19, 21–23; Minute Order (Dec. 12, 2025); Minute Order (Sept. 22, 2026) (noting "the prior representations that this case would be resolved without court intervention"). Having succeeded in that position, the Republic "may not thereafter, simply because [its] interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted).

Finally, the Republic's reference to the potential need for an OFAC license to enter into a binding settlement changes nothing. *See* ECF 29 at 37 n.9. Indeed, Venezuela concedes it "does not contend that a license is required for the Court to adjudicate the Petition." *Id.* This is because OFAC sanctions prohibit only the "entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other order . . . purporting to transfer or otherwise alter or affect property or interests in property . . . blocked pursuant to § 591.201." 31 C.F.R. § 591.407; *see also Koch Minerals*, 514 F. Supp. 3d at 43. The Instrument contemplates only the entry of judgment, not a binding agreement for the payment of money. Instrument ¶ 2 & Ex. A. Nor does the Instrument authorize execution against any particular asset. Rather, it leaves Clorox to pursue enforcement proceedings with all their attendant burdens, including overcoming any targeted

asset's immunity from attachment and execution. No interest of Venezuela in blocked property is transferred, altered, or affected by the Instrument. And no OFAC license is required for this Court to enter judgment against a respondent that has no valid defenses and thus reasonably agrees to stipulate to entry of judgment. *See G&A Strategic Invs. I LLC v. Petróleos de Venezuela, S.A.*, 810 F. Supp. 3d 463, 471 (S.D.N.Y. 2025) ("foreign blocking regulations bar only those judicial proceedings that effect a *transfer* of foreign property or property interests," which "does not include the entry of judgment, which falls short of transferring any property or property interests") (quotation omitted) (emphasis in original); *Koch Minerals*, 514 F. Supp. 3d at 44 ("[N]o OFAC license is needed" because "[c]odifying the ICSID award does not reach into PdVSA's pockets.").

### B. Alternatively, the Court Should Confirm the Award

If the Court does not enforce the Instrument, it should confirm the Award. Enforcement of an arbitral award that is subject to the New York Convention is governed by Section 207 of the Federal Arbitration Act ("FAA"), which entitles "any party to the arbitration" to apply "for an order confirming the award as against any other party to the arbitration" within three years after the arbitral award has been issued. 9 U.S.C. § 207. The party seeking to confirm an award must submit the "duly authenticated original award or a duly certified copy thereof" and the "original agreement [to arbitrate] . . . or a duly certified copy thereof." Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. IV(1), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3. Clorox has met these simple requirements.

Under 9 U.S.C. § 207, a court "shall confirm" a New York Convention award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." For this reason, "[f]ederal courts in the United States have minimal discretion to refuse to confirm an arbitration award under the FAA." *Tatneft v. Ukraine*, 301 F.

Supp. 3d 175, 184 (D.D.C. 2018) (citing 9 U.S.C. § 207). And "[t]he showing required to avoid summary confirmation is high." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) (internal quotation marks omitted). The party resisting confirmation bears a heavy burden, as the Republic accepts. ECF 29 at 43.

Here, the Republic has already answered the Petition and pleaded only one defense—public policy. Its argument—that it would violate U.S. public policy to recognize an award rendered in an arbitration in which the Maduro regime directed the Republic's defense—was inconsistent with the decisions of trial courts in this District and has since been rejected by the D.C. Circuit. *Venezuela US SRL*, 178 F.4th at 683–85. Thus, the Republic's only timely defense fails as a matter of law (and the Republic now purports to withdraw it in any event). ECF 28-3 ¶ 15.

The Award can further be confirmed because even if Venezuela had properly and timely sought leave to amend its Answer, such amendment would be futile. *United States v. All Assets Held at Bank Julius Baer & Co.*, 229 F. Supp. 3d 62, 71 (D.D.C. 2017) (denying amendment as futile where defendant sought to add "new affirmative defenses [that] are meritless as a matter of law"). As discussed above, the Republic's First Defense fails because the Instrument does, in fact, bind the Republic. But even if it did not, the enforceability of the Instrument is not a defense to the enforcement of the Award as sought in the Petition. The Second Defense, discussed below, is not a defense to the Petition, but rather raises an issue concerning the calculation of interest. The Third Defense is little more than a reservation of rights against post-judgment enforcement, which again is not a defense to the Petition. And the Sixth Defense, insufficient service of process, fails for reasons that have already been discussed at length.

That leaves just the Fourth and Fifth Defenses. The Republic's Fourth Defense—that Clorox did not have a valid "investment" entitling it to arbitration—is foreclosed by circuit

precedent. While Venezuela quibbles with whether the jurisdictional determinations contained in an award are truly those of the panel where, as here, the panel's initial findings were set aside and new findings were incorporated into the final Award, the Republic nevertheless concedes that whether a claimant held a protected "investment" is a question for the arbitrators, not U.S. courts. *See* ECF 28-1 at 38–39 n.1; ECF 29 at 42. Moreover, the Republic's challenge on this ground has already been rejected by the Swiss Federal Supreme Court, which is the only court with the power to set aside the Award. Its Fifth Defense—that the tribunal properly excluded a document from the arbitration, but the Award should nevertheless be denied recognition simply because the document was tendered to the tribunal—also fails because, as the Republic "accepts," the Swiss set-aside court refused to impose any adverse consequence, and the Republic cannot relitigate the correctness of that decision in this forum by invoking Section 207's public policy exception and Article V(2)(b) of the New York Convention. ECF 28-1 at 41–43 & n.2.

### C. The Form of Judgment

Venezuela's Second Defense does not dispute that judgment should be entered against the Republic. Rather, it is an objection to the interest available under the Award and any resulting judgment. The proposed judgment submitted with this motion mirrors the judgment the Republic agreed to at Exhibit A to the Instrument. It confirms the Award, which awards principal of US$ 104,102,806 and costs of US$ 4,959,729.27; and awards pre-judgment interest "at the interest yield rate on ten-year U.S. bonds compounded annually," running on the principal from September 3, 2014, and on the costs from August 9, 2023, as the Award provides, ECF 1-1 ¶¶ 836, 839, through entry of judgment. By way of example only, the full amount owed to Clorox as of October 26, 2026, is US$ 146,630,686.51. That figure is computed by applying the market yield on U.S. Treasury securities at 10-year constant maturity, as published by the Federal Reserve Board in

Statistical Release H.15, to the principal from September 3, 2014, and to the costs from August 9, 2023, reset and compounded on each anniversary of those dates. Through October 26, 2026, that yields US$ 36,882,052.12 in interest on the principal, which is close to the Republic's figure, using a rate that "resets annually and never applies a later yield to an earlier period." *See* ECF 29 at 38 (calculating interest of approximately US$ 34.6 million on the principal damages amount).

To address Venezuela's objections, Clorox has included two additions in the proposed judgment. First, the judgment states expressly that it does not confirm or enforce paragraph 838 of the Award, the non-monetary relief concerning trademarks, which Clorox has never sought. *See* ECF 1 ¶ 48; ECF 28-1 at 35. Second, because the Republic contends that 28 U.S.C. § 1961 displaces the Award's rate once judgment enters, ECF 29 at 38, the proposed judgment offers the Court an alternative paragraph under which the Award's rate runs through the date of judgment and post-judgment interest accrues under 28 U.S.C. § 1961. But parties can contract for the accrual of post-judgment interest at the Award's rate and Clorox's position is that the parties agreed to the Award's rate "until full payment." Instrument Ex. A ([Proposed] Final Judgment) ¶ 2(c). Accordingly, the Court can enter judgment consistent with the parties' agreement. The New York Convention requires confirmation either way, and Clorox does not intend to delay entry of judgment by engaging in a protracted dispute over the post-judgment rate.

## CONCLUSION

The Court should deny the Republic's motion to dismiss or for leave to amend, grant Clorox's cross-motion, enforce the Instrument, and enter the attached judgment confirming the Award. In the alternative, the Court should confirm the Award under 9 U.S.C. § 207 and enter judgment in the attached form.

Dated: October 26, 2026

Respectfully submitted,

/s/ *Miguel A. Estrada*
Miguel A. Estrada (D.C. Bar No. 456289)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500

Rahim Moloo (*pro hac vice* forthcoming)
Jason W. Myatt (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000

*Counsel for Petitioner Clorox Spain S.L.*

**CERTIFICATE OF SERVICE**

I certify that on October 26, 2026, I caused the foregoing, with its proposed order and proposed judgment, to be filed through the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

/s/ *Miguel A. Estrada*
Miguel A. Estrada